[No. 2484.   Decided March 16, 1897.]

THE STATE OF WASHINGTON, *Respondent*, v. C. M. SHELTON, *Appellant*.

INTOXICATING LIQUORS — UNLICENSED SALE — BURDEN OF PROOF — EVI-
DENCE — WITNESS — CROSS-EXAMINATION.

In a prosecution for selling intoxicating liquors without a license therefor, the burden is upon the defendant to show that the sale was made under a license.   (GORDON, J., dissents).

In a prosecution for selling whiskey without license, the fact that a witness testified to the sale of blackberry brandy cannot be urged as error, when the prosecution made no attempt to pursue the subject and there was no motion to strike the answer on the part of the defendant.

The refusal to instruct the jury to find a verdict for defendant, in a prosecution for selling liquor without a license, is not erroneous, when the testimony of the prosecuting witness, an unwilling one for the state, shows that he purchased whiskey from defendant about six months prior to the finding of the indictment against him, although the testimony of defendant, they being the only two witnesses, is flatly contradictory.

Where a witness has testified to only two purchases of whiskey at defendant's drug store, one from defendant and the other from

an employee, and his recollection in regard to the purchase from defendant has been shown to be uncertain, the defendant may properly cross-examine him as to the date of his purchase from the employee, for the purpose of testing his memory as to the sales testified to.

Where the prosecuting witness, in the trial of an indictment for selling intoxicating liquors, has testified that he purchased whiskey at defendant's drug store and made an entry thereof in a poison register kept for the entry of sales of liquor and poisons, and the defendant has testified that there was no entry of sale to witness except of Paris green, it is error for the court to exclude testimony as to the date of such purchase, and also to exclude testimony as to the registry book kept by defendant, on the ground of immateriality of the evidence.

Appeal from Superior Court, Klickitat County.— Hon. Solomon Smith, Judge. Reversed.

*Huntington & Wilson,* and *W. B. Presby,* for appellant:

It was error for the court to instruct the jury that " it is not necessary for the state to prove that the defendant had no license, nor that it was sold upon a physician's prescription. These matters are matters of defense, and if either of them exist it is necessary for the defendant to prove that it does exist, not for the state to prove that it does not exist." The rule in Massachussetts seems to have been invariably that contended for by appellant, until changed by statute. *Commonwealth v. Bolkom,* 3 Pick. 281; *Commonwealth v. Tuttle,* 12 Cush. 502; *Commonwealth v. Kimball,* 7 Metc. 304; *Commonwealth v. Thurlow,* 24 Pick. 374. And this is the rule adopted by other states. *State v. Kuhuke,* 26 Kan. 405; *State v. Nye,* 32 Kan. 201; *State v. Schweiter,* 27 Kan. 499; *Mehan v. State,* 7 Wis. 670; *Hepler v. State,* 58 Wis. 46; *Lisbon v. Lyman,* 49 N. H. 553; *State v. Perkins,* 53 N. H. 435.

*C. H. Spalding,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

Scott, C. J.—The defendant was the owner of a drug store in the town of Goldendale in Klickitat county, and was convicted of selling intoxicating liquors to one Oscar Nelson without having any license therefor. The indictment alleged the sale as on the second day of April, 1896, and the trial was had in June following. The prosecution offered evidence to show a sale and rested, without attempting to prove that the defendant had no license, and one of the points urged on this appeal is that the burden of proof was on the state to show, at least *prima facie*, that the defendant had no license. The authorities are in conflict upon this proposition, but the greater number of cases seem to hold that this burden should be placed on the defendant (Black, Intoxicating Liquors, § 507; 1 Greenleaf, Evidence, § 79), and this undoubtedly is the more convenient rule, for, if the defendant has a license, it is imposing upon him no hardship to require him to make proof of it, and he has the same right of recourse to the public records to prove the issuance of it that the prosecution has, and in a locality where many licenses are issued, and the record of the issuance thereby rendered voluminous, it might be somewhat of a hardship on the state to require the prosecution to show from such records that no license had been issued to the defendant.

It is next contended that it was error to allow the prosecution to introduce evidence to show a sale of blackberry brandy by the defendant to Nelson, the principal witness for the state. On this point the record is as follows :

" *Question:* What kind of liquor have you bought there ? *Answer:* I bought blackberry brandy there.

"Q. State whether or not you ever bought any whiskey?"

There was no attempt upon the part of the prosecution to pursue the question of the sale of any blackberry brandy, and there was no motion made by the defendant to strike the answer. The efforts upon the part of the state were directed towards showing a sale of whiskey by the defendant to said witness, and, without entering into any consideration of the question as to whether blackberry brandy is an intoxicating liquor or not, we are satisfied that no error is disclosed by the record on this proposition.

It is next contended that the motion for a verdict in favor of the defendant when the prosecution rested, as well as a request for an instruction to the jury to find a verdict for him at the close of the case, should have been granted. These questions present some difficulty. The testimony as to the sale was confined to two witnesses, Nelson and the defendant. Answering the question as to whether he ever bought whiskey of the defendant, and some further questions thereon, Nelson testified:

"*Answer:* I have called for whiskey; I couldn't swear whether or not I got whiskey.

"Q. You called for whiskey? A. I did.

"Q. When was that? A. I couldn't tell you the exact time.

"Q. Well, come as near to it as you can. A. That is a thing I couldn't hardly swear to. It might have been three months ago, it might have been six or seven months. It might have been longer since I called for whiskey.

"Q. What is your best judgment about what time it was? A. It has probably been quite a while ago, I should think, since I bought the whiskey there.

"Q. By the Court: You are asked, what is your best
38—16 WASH.

judgment as to the time when you bought the whiskey there?  A. It has probably been six months ago, about six months ago since I bought whiskey.

"Q. How did you get it?  A. I got it at fifty cents a bottle; just paid half a dollar for it.

"Q. Who did you get it from?  A. Mr. Shelton.

"Q. Do you know what the quantity was that you got?  A. No, sir, I do not.

"Q. What kind of a bottle was it?  A. One of them round flasks.

"Q. You got a round flask of something; what did you think it was?  A. I took it for whiskey.

"Q. You thought it was whiskey?  A. I did.

"Q. What did you do with it?  A. Used it.

"Q. What for?  A. Drank it.—I drank it.

"Q. Where was it that you got this?  A. At C. M. Shelton's drug store.

### CROSS-EXAMINATION.

"Q. This time that you got what you have alluded to as whiskey, might have been more than a year ago, might it not?  A. It might have been, yes, sir.  I couldn't positively swear to that.  I wouldn't want to swear to it.

"Q. You couldn't tell whether it was within a year or not; whether it was in the winter time or in the summer time?  A. I could not.

### RE-DIRECT EXAMINATION.

"Q. I understand you to say in your cross-examination, that it might have been over a year ago that you got this whiskey?  A. That I got the whiskey?

"Q. Yes, sir.  We want you to say, when, to your best recollection was it that you got this?  A. When I got this whiskey; I couldn't say exactly when I got this whiskey.

"Q. I am asking you to testify to your best recollection?  A. It might have been six or eight months; I presume it has been that long since I got whiskey there; it might have been a little longer.

"Q. What is your best judgment about when it was; how long ago; when do you think it was?  A.　It has

been at least six months ago since I got any whiskey there at Mr. Shelton's.

"Court : State what your best judgment is as to the time you got that ?   A. About six months."

The last question to him upon this point was upon re-cross examination, and was as follows :

"*Question:*  Now, Mr. Nelson, as I understand you, you say that you won't swear whether it was more than a year ago or not ?   *Answer:*  No, sir, I will not."

This was the only witness examined upon the part of the prosecution.   All of the testimony will not be given, nor many of the objections interspersed, but such parts as are material to the points considered will be stated.   The defendant testified squarely that he never sold Nelson any whiskey at any time.   There was further testimony, some of which will be hereafter given, to show that he had at one time bought whiskey of a Mr. Richards, who was employed by the defendant in the drug store, and to show that all sales of intoxicating liquors were entered in a register kept at the store, and that there was a controversy as to whether any sale had been made to Nelson within a year prior to the finding of the indictment.   Considering the apparent fact that the principal witness was, as is often the case in such prosecutions, an unwilling witness for the state, also that he had testified positively that he had bought whiskey of the defendant, and, when held down closely, had said that his best recollection was that it was about six months ago, and the further fact that any sale of whiskey to him at any time was directly contradicted by the defendant, we think there was testimony to show a sale of whiskey by the defendant to Nelson within a year prior to the finding of the indictment, sufficient to go to the jury, and that there was no error in refusing the motion for a

verdict, nor in refusing to give the peremptory instruction for one in favor of the defendant.

It is next contended that the court unduly restricted counsel for the defendant in cross-examining Nelson with reference to the purchase of whiskey he had made from Mr. Richards. On cross-examination the witness was asked:

"*Question:* Didn't you get this which you call whiskey from Mr. Richards? *Answer:* I did not.

"Q. Didn't you get some whiskey from him? A. I did, at one time.

Q. "How long ago was that? A. It was a little over a year."

After this answer was given, an objection was made to it as immaterial, which was sustained, but the answer was not stricken, and the further question was asked:

"*Question:* It might be within a year that you got this from Richards?"

This was objected to by the prosecution and the objection was sustained and excepted to. We are of the opinion that this was error. But two purchases of whiskey at the drug store in question had been testified to by the witness, one from the defendant and one from Richards. The recollection of the witness as to the time he purchased the whiskey of defendant is very uncertain, and it was necessary for the prosecution to establish the fact that it was within a year prior to the finding of the indictment, and testimony tending to show that it was more than a year prior thereto was legitimate as a defense to the action. The rule with regard to cross-examination upon collateral facts rests largely in the discretion of the court. But some latitude must be given, and in support of this question counsel for the defendant stated that they asked it for the purpose of testing the

memory of the witness.  There having been but two sales testified to, and Nelson having testified that, according to his best recollection, the whiskey he purchased of defendant was within a year, and that the purchase made from Richards was more than a year prior to the finding of the indictment, we think the question to which the court sustained the objection should have been answered, for it bore directly upon the witness's recollection as to a material fact in the case, and the defendant had a right to probe the memory of the witness with regard to it.

The next errors claimed are with regard to questions asked the defendant by his attorney relating to the register of sales kept at the store.  The witness for the state had testified on cross-examination as follows:

" *Question:*  Did you sign the poison register when you claim you got this [the whiskey] from Shelton. *Answer:*  I did.

" Q. You signed it in your own handwriting, did you ?  A. Yes, sir.

" Q. Now this poison register stated what you got this liquor for, did it ?  A. No, not exactly; it stated that I got it for medicine.

" Q. And you claim you got it for medicine ?  A. I do.

" Q. You say you signed the poison register ?  A. I did.

" Q. In your handwriting ?  A. Yes, sir.

" Q. You are perfectly positive about that, are you ? A. Yes, sir."

" Q. The poison register stated your name and the amount of liquor you got and what you paid for it? A. Yes, sir.  It stated my name.

" Q. And the purpose for which it was used?  A. Yes, sir."

Upon this point the defendant testified in his direct examination as follows:

"*Question*:   I want to ask you if this man Nelson ever signed the poison register in your store ?   *Answer:* No, sir.

" Q. For any intoxicating liquor ?   A. No, sir, he did not.

" Q. Is it there for any purpose; did he ever sign that register for anything?   A. I think his name went on once for poison; Paris green, something of that kind.

" Q. It was Paris green that he got ?   A. I guess it was, yes, sir.

" Q. Do you know how long ago that sale was for Paris green ? "

Objected to on the ground that it had nothing to do with this case.   The objection was sustained by the court.

Upon the re-direct examination of the defendant, the following occurred:

"*Question:*   Do you keep a book in the drug store; a registry book in which is entered a record of sales named in the statute,—including spirituous and malt liquors?   *Answer:*   Yes, sir.

"·Q. Does that record state the names of the persons to whom these liquors were sold ?   A. Yes, sir.

" Q. The amount ?   A. Yes, sir.

" Q. What it is used for ?   A. Yes, sir."

Here the prosecuting attorney objected to this line of examination and the court sustained the objection, remarking that it was immaterial.   Both rulings were excepted to.   No further attempt to prove anything with reference to the register was made by either side.   The register itself was neither offered by the defense nor called for by the prosecution.   With reference to the last ruling, that which took place indicates that counsel for the defendant was led to believe, and we think he was justified in assuming, considering the scope of the objection, it being to

that line of examination, and the ruling of the court
that it was immaterial, that no further answers to like
questions would be permitted, and also that it was the
opinion of the court that the record was not admissible in evidence, and while technically the condition
of the record upon this point, were it not for the nature
of the objection—it not being to any particular question, but to the whole line of examination upon that
subject—would not have been sufficient to found
error upon in the absence of further questions or offer
of proof, we do not think it should be so held under
the circumstances mentioned, and that the defendant
should be permitted to urge the ruling as error without attempting any further examination upon that subject or proffering the record in evidence. In this
connection, we have considered the point only with
reference to the materiality of the proof, that being
the ground upon which it was excluded under the
ruling of the court. No objection was made to its
competency or otherwise. While, as a general rule,
the ruling of a court will be sustained upon any good
ground, though not stated in the objection or ruling,
notwithstanding the one that is stated is insufficient,
it is not a universal rule, because even though the evidence offered may be technically incompetent as tending to prove by parol the contents of a writing, the
parties may not desire to raise any question as to its
competency, for sometimes it might be a matter of
convenience to both sides to have secondary proof introduced instead of the primary. Furthermore, it
cannot be said to appear in this instance that the testimony was incompetent upon this ground; for it
nowhere appeared in the testimony that the time or
date of the sale had been entered in the register, and
that was the matter directly involved in the first ques-

tion aforesaid to the defendant ruled upon, and it was the evident purpose, when the further examination of the defendant was interrupted by the objection and ruling last stated, to show that no sale had been made to Nelson within the year, or that no entry of any such sale was contained in the register. The date was a material matter, and if it was not entered in the register, parol proof was admissible thereon. Also, in a case where numerous sales have been made extending over a long period of time, it might be that parol proof would be competent primarily, from one who had examined the record, to show that no entry of any sale to a particular person appeared therein, the record itself being produced. In this instance the prosecution had a right to call for the register, and to show that the entry of Paris green was incorrect, and that it was really whiskey that Nelson purchased, if an entry appeared therein showing a sale to him within a year, and, of course, could show a sale although there was no entry. But the production of an unmutilated record, which failed to show any sale to Nelson within a year, would have been strong evidence in this case in behalf of the defendant, Nelson having testified positively that he wrote his name therein, etc., when he bought the whiskey. And it appearing from the testimony of the defendant that Nelson had signed the poison register but once, it was competent for the defense to show how long ago that sale was, even though the defendant claimed it was for Paris green instead of whiskey. We think the rulings of the court aforesaid as to these matters were erroneous and that the defendant's case may have been greatly prejudiced thereby. The right to introduce competent and relevant proof is of course one of the

most important rights in any trial, either civil or criminal, and it must be carefully protected.

Reversed and remanded.

Anders and Reavis, JJ., concur.

Gordon, J. (*dissenting.*)—I concur in the result, but not in the holding, that the burden was upon the defendant to prove his license. Decisions almost without number might be referred to as bearing upon this question, and it is probably true that in point of number they support the rule laid down in the opinion of the majority, but I think the trend of modern authority is the other way. The rule was founded in necessity, and the impossibility in many cases of the government being able to make proof of the non-existence of a license. In the earlier periods when mere private licenses were generally in vogue the license itself constituted the sole and only evidence of its existence, and the difficulty of proving a negative justified the adoption of the rule that where the subject matter of a negative averment *was peculiarly within the knowledge* of the other party, the averment was taken as true unless disproved by that party, and this was the extent of the limitation. 1 Greenleaf, Evidence, § 79.

But under our statute on the subject a public record is required to be kept for all liquor licenses, and the question of whether a particular person has or has not a license is clearly not one " peculiarly within the knowledge" of such persons but can readily be determined from the record. Therefore, the rule has no application to existing conditions in this state. The necessity for its application does not exist. If the indictment in this case had failed· to charge the non-existence of a license, the other acts which it

charges the defendant with committing would consti-
tute nothing illegal or immoral.  The act of selling is
not of itself illegal, but becomes such when unaccom-
panied by a license.  Logically, the rule adopted by
the majority makes it unnecessary for the state to
make any proof whatever of the *only fact* which con-
stitutes the crime charged, and disregards that humane
principle of the law which presumes ever defendant
innocent until his guilt is established by the proof.