[No. 6288. Decided December 8, 1906.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM BELKNAP, *Appellant.*[1]

CRIMINAL LAW—TRIAL—SEDUCTION—IMPROPER CROSS-EXAMINATION. In a prosecution for seduction, in which three witnesses for the defendant testified that they previously had had sexual intercourse with the prosecutrix, it is an abuse of discretion and prejudicial error, depriving the defendant of a fair trial, to permit cross-examination to proceed to the extent of asking whether one of such witnesses had broken an engagement with another woman, whether one of them had been accused of bastardy, and allowing questions implying that they had had sexual intercourse with other women.

[1]Reported in 87 Pac. 934.

TRIAL—INSTRUCTIONS—COMMENT ON THE EVIDENCE. An instruction assuming as a fact that defendant had fled is not an unlawful comment on the evidence, where the defendant admitted and himself testified to the fact.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered March 28, 1906, upon a trial and conviction of the crime of seduction. Reversed.

*Welsh & Welsh*, for appellant.

*H. W. B. Hewen* (*William G. Crosby*, of counsel), for respondent.

RUDKIN, J.—This was a prosecution for the crime of seduction, and from a judgment of conviction, the present appeal is prosecuted. Errors are assigned in the admission of testimony, in the giving of instructions, and in the overruling of a motion for a new trial. Columbus Stevens, Frank Brooks, and William Chapman were called as witnesses on the part of the appellant, and each testified, on his direct examination, that he had had sexual intercourse with the prosecuting witness prior to the date of the seduction alleged in the information. The following proceedings occurred on the cross-examination of these witnesses.

First, the witness Stevens:

"Q. Do you know a girl by the name of Carrie Graderson; engaged to be married to her on the 11th? Objected to as being immaterial. Objection overruled by the court, to which ruling the defendant excepts. A. No, sir, I was not. Q. Engaged to her? A. I was, yes. Q. Date fixed? A. Not exactly. Q. Wasn't the date fixed for the 11th of July? Mr. Welsh: We object to this class of testimony as being entirely immaterial. Objection overruled by the court, to which defendant excepts. Q. You say the date was not fixed for the marriage? Defendant objects on the grounds that it is immaterial; objection overruled. Defendant excepts. A. Not exactly. No. Q. What do you mean by 'not exactly?' Defendant objects to the testimony as being immaterial, irrelevant, and not proper cross-examination. Objection overruled

by the court, to which defendant excepts. Q. What do you
mean by saying that the date was 'not exactly' fixed? Same
objection. Same ruling, to which defendant excepts. A. We
were engaged to be married, but there hadn't been no exact
time. Q. How long had you been at Gile's ranch before
Carrie Graderson came over there? A. Something like a
month. Q. Came over there to see why you wasn't going to
marry her? Defendant objects on grounds that it is imma-
terial. Objection overruled and defendant excepts. A. She
was wanting to go to California. She wanted to get married
before she went down. I wasn't ready yet, and told the girl
that I wasn't going to get married yet, and she could go to
California. Q. She insisted it had been fixed for the 11th of
July? Defendant objects on the grounds that it is imma-
terial. Objection overruled. Defendant excepts. A. No.
Q. She wanted you to marry her? Same objection by de-
fendant; same ruling. Defendant excepts. A. No. Q. You
didn't and never married her? Same objection by defendant.
Same ruling. Defendant excepts. A. No, never have. Q.
You went off and left her at Oregon City without saying
where you were going. Defendant objects on grounds that
it is immaterial. Objection overruled. Defendant excepts.
A. Yes, sir, I did."

Second, the witness Brooks:

"Q. Was she the first woman you ever had sexual inter-
course with? Mr. Welsh: Objected to as being immaterial.
Objection overruled by the court, to which defendant excepts.
A. No, sir, it was not. Q. With whom had you had sexual
intercourse prior to having sexual intercourse with Miss
Hughes? Objected to as being immaterial and irrelevant.
Objection overruled by the court. Defendant excepts. A.
Well, I don't know who it was; people of that class do not
usually go under their right names. Q. Was there no woman
with whom you had sexual intercourse prior to Miss Hughes,
whose right name you do know? Mr. Welsh: Objected to as
immaterial, irrelevant and improper cross-examination. The
court: He can answer if he has no objection himself, but he
does not have to answer unless he wants to. Defendant ex-
cepts. No answer. Q. Ever live in Willapa Valley? A. Yes,
I have. Q. Have sexual intercourse with a girl living up

there? Mr. Welsh: Objected to as immaterial, irrelevant, and improper cross-examination. The Court: The objection is overruled. He can use his pleasure about answering. Defendant objects. No answer.. Q. Did you have sexual intercourse with a young girl living in Willapa Valley, from whom the birth of an illegitimate child resulted at any time prior to this? Mr. Welsh: Same objection. The Court: Overruled. Leave it to the witness to answer as he wants to. Defendant excepts. A. No, sir, I never did. Q. Have you ever been charged or is it claimed by any girl living in this county, that she has an illegitimate child of which you are the father? Mr. Welsh: Objected to as immaterial, irrelevant, and improper cross-examination. The Court: Overruled. Leave it to the witness to decide whether he wants to answer. Defendant excepts. A. No, sir, there is no girl, not to my knowledge. It is a sad mistake if there is. Q. Is there any girl claiming that you are the father of an illegitimate child, that is not now living? Mr. Welsh: Same objection. Same ruling. Defendant excepts. A. Not to my knowledge. I don't think there is."

. Third, the witness Chapman:

"Q. You say in the summer of 1904 you had intercourse with Miss Hughes; had you had sexual intercourse with any other girl before that? Objected to as immaterial and improper cross-examination. Objection overruled by the court, to which defendant excepts. A. Yes, I did. Q. Who was it? Objected to as being immaterial, irrelevant, and improper cross-examination. The Court. The objection is overruled, but the witness may answer or not as he likes. The defendant excepts. A. I do not care to answer that question. Q. Did you, at any time prior to these acts with Miss Hughes that you have testified to, have sexual intercourse with a girl named [name withheld]? Objected to as irrelevant, incompetent, immaterial and improper cross-examination. The Court: Overruled. Let the witness decide for himself whether he wants to answer that question. A. I do not care to answer that question."

Courtrooms are bad enough when their proceedings are conducted under proper restrictions, and they should not be made schools for scandal. The extent to which cross-exami-

nations will be permitted is no doubt in a large measure in the discretion of the trial court; and it is difficult to draw the line   as to where legal discretion as to the admission or exclusion of such testimony commences and where it ends; but we have no hesitation in saying that sound judicial discretion was abused in this case.   Whether one of the witnesses was engaged to another woman, whether the engagement was broken off, and the circumstances surrounding such engagement, were questions wholly foreign to the issues in this case. The relations of the witnesses with other women, and whether one of them had been accused of or was guilty of bastardy, falls within the same category.   Wharton's Criminal Evidence states the rule thus:

·"Every man is entitled to such a measure of oblivion for the past as will protect him from having it ransacked by mere volunteers; and aside from this general sanction, if witnesses were to be compelled to answer fishing questions as to any scandals in their· past lives, the witness-box would become itself a scandal which no civilized community would tolerate. Allow unqualified liberty in this respect, and no witness, no matter how respectable, could be sworn, without being required, if it should please the opposing party, to have even the most remote passages of his past life explored, and without being himself compelled to narrate any events in that life which were discreditable; no matter for how long a time such discredit had been atoned for by penitence, by reformation, and by correction of the wrong.   Such inquisitions, however, the courts have refused to permit   .   .   ." Wharton, Criminal Evidence (9th ed.), § 472.

In *Great Western Turnpike Co. v. Loomis*, 32 N. Y. 127, 88 Am. Dec. 311, the court said:

"The proposition that no witness has a right to complain of an opportunity to vindicate his integrity by his own oath, is plausible and specious, but illusory.   It ignores the indignity of a degrading imputation, when there is nothing in the circumstances of the case to justify it.   It ignores, too, the humiliation of public arraignment by an irresponsible ac-

cuser, misled by an angry client, and shielded by professional privilege. Few men of character, or women of honor, could suppress, even on the witness stand, the spirit of just resentment which such an examination, on points alien to the case, would naturally tend to arouse. The indignation with which sudden and unworthy imputations are repelled, often leads to injurious misconstruction. A question, which it is alike degrading to answer or decline to answer, should never be put, unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character, under the forms of law, would contribute little to the development of truth, and still less to the furtherance of justice. It would tend neither to elevate the dignity of our tribunals, nor to inspire reverence for our system of jurisprudence."

In *Elliott v. Boyles*, 31 Pa. St. 65, the court said:

"It would be absolutely intolerable that a man, by being brought into court as a witness, should be bound to submit all the acts of his life to the exposure of malice, under the pretense of testing his credibility. If such were the test, courts would often present in language and temper, scenes of unmitigated ruffianism, and the means of enforcing law and order in society would be denounced as sources of corruption and disorder."

In *Buel v. State*, 104 Wis. 132, 80 N. W. 78, the court said:

"The administration of justice requires that trial courts shall not have their discretionary powers circumscribed by any very narrow boundaries, but does require that such limit shall be placed upon them as will prevent any mere prejudice to be built up in the course of a trial, especially in an important case like this, which will tend to influence a jury to determine the facts otherwise than from the legitimate evidence produced in court. It seems clear that such limit was passed in allowing the cross-examination in question, to the extent to which it was carried. . . . A reading of the questions under consideration leads to the irresistible conclusion that no idea was entertained by the cross-examiner that proof would be elicited of the matters implied by them. We say 'implied' because the asking of the direct questions in the

manner in which they were asked implied to some degree that the examiner was possessed of information upon which the questions were based, and although the answers were in the negative, the bad effect of the insinuations thrown out by the questions was not and could not have been removed entirely from the minds of the jurors. It is useless to refer to authorities on this subject. Text writers and adjudged cases are generally in accord that, so long as the cross-examination is carried on with reasonable fairness, to test the credibility of the witness, it is permissible, but the moment questions are asked concerning facts touching the witness' character, which are irrelevant to the facts in issue, for any other purpose than to affect his credibility or which manifestly do not bear on the subject of credibility, the right of cross-examination is abused, and on objection should be restrained within legitimate limits."

Nor is it material that the witnesses were not required to answer the questions. As said by the court in *Buel v. State, supra,* the questions themselves implied to some degree that the examiner was possessed of information upon which the questions were based, and neither an answer nor a refusal to answer could remove the insinuation from the minds of the jurors. The privilege is not that of the witness alone. If the cross-examination is so conducted as to deprive the appellant of a fair and impartial trial, he has just grounds to complain, and we think that such is the case before us.

After the appellant rested, the court reopened the case and permitted the respondent to offer further testimony in chief. This ruling is assigned as error; but inasmuch as the questions will not arise on a retrial, we will not consider it on this appeal. Error is assigned in the giving of the following instruction:

"The jury are authorized to consider the flight of the defendant after a warrant was issued for his arrest, or after he learned that a prosecution was to be instituted against him, and it is for them to say just how much weight, if any, they shall give that fact as an evidence of guilt."

If the question of flight was a controverted one on the trial,

this was a clear comment on the facts, but such was not the case. The appellant himself testified that he saw the deputy sheriff coming, knew what he was coming for, and fled. While courts should be cautious in assuming facts as proven in a criminal case, yet where a defendant himself testifies to a fact, he cannot complain if the court assumes his testimony to be true in its charge to the jury. *People v. Phillips*, 70 Cal. 61, 11 Pac. 493; *State v. Archer*, 73 Iowa 320, 35 N. W. 241; *State v. Day*, 79 Maine 120, 8 Atl. 544; *State v. Angel*, 29 N. C. 27.

We find no error in the other rulings complained of, but for the error in admitting evidence on cross-examination, the judgment is reversed and a new trial ordered.

MOUNT, C. J., ROOT, DUNBAR, and CROW, JJ., concur.

FULLERTON and HADLEY, JJ., took no part.