[No. 32140. Department Two. February 5, 1953.]

THE STATE OF WASHINGTON, *Respondent*, v. SAMUEL EMMANUEL, *Appellant*.[1]

[1]Reported in 253 P. (2d) 386.

*Lee Olwell, Rummens, Griffin & Short,* and *Paul R. Cressman,* for appellant.

*Ralph G. Swanson* and *Alfred J. McBee, Special Assistant Attorney General,* for respondent.

HAMLEY, J.—Samuel Emmanuel was brought to trial on an information charging, in two counts, the crime of asking a bribe. The jury disagreed on the second count and convicted on the first. Defendant appeals.

Count I, on which the conviction was obtained, reads as follows:

"He, the said Samuel Emmanuel, in the County of Thurston, State of Washington, on or about the 27th day of April, 1951, then and there being a person appointed by the Washington State Commissioner of Public Lands and acting for and on behalf of the State of Washington as clerk to the said Washington State Commissioner of Public Lands and as secretary to the Washington State Board of Land Commissioners with duties pertaining to appraisement and sale of timber lands belonging to the State of Washington, did then and there wilfully, unlawfully, and feloniously ask from one Charles Hovey a certain sum of money, the exact amount of which was not specified, as compensation, gratuity, or reward upon an understanding or agreement with the said Charles Hovey, that the opinion, judgment, action, decision, or other official proceeding of the said defendant, Samuel Emmanuel, with relation to those certain applications of the V-M Timber Company for the appraisal and sale of certain timber belonging to the State of Washington and situated on state lands in Cowlitz County, State of Washington, described as follows, to-wit:

Sections eight (8) and ten (10) and the South one-half (½), and the Southeast Quarter (¼) of the Northeast Quarter (¼), and the Southeast Quarter (¼) of the Northwest Quarter (¼) of Section four (4), all in Township nine (9) North, Range three (3) W., W. M. which said applications were then pending before said Washington State Land Commissioner and before said Washington State Board of Land Commissioners, would be influenced thereby."

On January 12, 1949, the commissioner of public lands (commissioner) appointed appellant to the position of clerk in the commissioner's office. On the same day, the commissioner, as chairman of the board of state land commissioners (board), appointed appellant secretary of that board. He occupied that position until December, 1951.

The statute providing for a secretary for the board specifies no duties for the secretary. RCW 43.65.010 (Rem. Supp. 1941, § 7797-10). By established procedure, however, appellant, as secretary of the board, had certain official duties relative to the sale of state timber. One of these duties was to assign the cruisers who were to check the timber for which a purchase application had been filed.

When this had been done and the cruisers had made their reports, it was appellant's practice, at his convenience, to deliver to the administrative assistant to the commissioner the file containing such reports covering the particular application. The latter then prepared recommendations as to price and conditions of sale for submission to the board. If and when approved by the board, the timber was advertised for sale and sold at public auction at a price not less than the minimum fixed by the board.

The transaction in connection with which appellant was convicted of asking a bribe involves the V-M Timber Company, of Vancouver, Washington. On February 7, 1950, this company filed with the commissioner three applications for the purchase of state timber in Cowlitz county. The company was greatly in need of timber, and Charles V. Hovey, manager of the company, several times wrote to appellant urging that cruisers be assigned to check the tim-

ber covered by the company's applications. Appellant's replies attributed the delay to lack of cruisers, backlog of applications, or weather conditions.

In a letter dated April 20, 1951, appellant invited Hovey to drop into the office. A few days later, appellant telephoned to Hovey, asking if the latter would be interested in purchasing seven million feet of fir timber on other tracts. When interest was indicated, appellant suggested that Hovey come to Olympia on April 27, 1951, to discuss the matter. It appears that one Irwin Anderson was also interested in this seven million feet of fir, and that appellant had arranged to bring Hovey and Anderson together with the thought that these two might work out some arrangement to handle the purchase together. The three men went to lunch together, after which Anderson left. Hovey and appellant returned to the latter's office.

Hovey testified that appellant then offered to expedite the cruise covering the timber for which the V-M Timber Company had applied and "help out" in securing the bid for the company, in return for a payment of fifty cents a thousand feet. This would have amounted to about thirty thousand dollars on approximately sixty million feet of timber which the company desired to purchase. Hovey testified that when this offer was made, he told appellant that the proposition would be referred to the company. Appellant denied this conversation, and testified that his only purpose in asking Hovey to his office was to arrange a financial transaction between Hovey and Anderson relative to the other timber to which reference has been made.

Appellant's first three assignments of error direct attention to the statute defining the crime of asking or receiving a bribe, and raise the question of whether the evidence was sufficient to support the conviction.

The statute referred to is RCW 9.18.020 (Rem. Rev. Stat., § 2321), and reads as follows:

"Every executive or administrative officer or person elected or appointed to an executive or administrative office who asks or receives directly or indirectly, any compensation, gratuity, or reward, or any promise thereof, upon an

agreement or understanding that his vote, opinion, or action upon any matter then pending, or which may by law be brought before him in his official capacity, shall be influenced thereby; and every member of either house of the legislature of the state who asks or receives, directly or indirectly, any compensation, gratuity, or reward, or any promise thereof, upon an agreement or understanding that his official vote, opinion, judgment, or action shall be influenced thereby, or shall be given in any particular manner, or upon any particular side of any question or matter upon which he may be required to act in his official capacity; and every judicial officer and every person who executes any of the functions of a public office not hereinbefore specified, and every person employed by or acting for the state or for any public officer in the business of the state, who asks or receives, directly or indirectly, any compensation, gratuity, or reward, or any promise thereof, upon an agreement or understanding that his vote, opinion, judgment, action, decision, or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding or in any way neglect or violate any official duty, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

In contending that the evidence was not sufficient to support a conviction under this statute, appellant first argues that he did not and could not influence in any way the sale of state timber. In this connection, it is asserted that the information charged appellant as an appointed administrative officer; that the only office of that nature which he held was that of secretary of the board; that the statute providing for this office specifies no duties for the secretary; and that, therefore, there was no "matter then pending" before the secretary of the board, to use the words of the statute. *State v. Hart*, 136 Wash. 278, 239 Pac. 834, is cited by appellant in support of this argument.

In the instant case, unlike the *Hart* case, there was evidence which the jury was entitled to believe, to the effect that appellant had official duties respecting the sale of state timber which could be affected by the payment or promise of payment of a bribe. As secretary of the board, appellant could prejudice the interest of applicants by de-

laying the assignment of timber cruisers, or delaying the delivery of the file to the administrative assistant to the commissioner. On the other hand, he could serve the interest of applicants by expediting such assignments, or by timing the timber cruising so that competition in the bidding would be minimized.

It is true that the duties of board secretary, which gave appellant the opportunity to prejudice or serve the interest of applicants, are not prescribed by statute. The criminal statute, however, does not limit the crime of asking or receiving a bribe to cases where official duties prescribed by statute may be affected. Nor does *State v. Hart, supra.* It is sufficient if, as here, the state officer, agent or employee is given such official duties by direction of his superiors or by customary office practice.

The evidence further entitled the jury to find that the matter concerning which appellant's official duties might be affected—the application of the V-M Timber Company—was pending before appellant at the time of the alleged asking for a bribe. It is therefore immaterial whether appellant was charged under the first division of RCW 9.18.020, as he contends, or under the third division, as the state contends. In either case, the evidence was sufficient with regard to the opportunity appellant had, in the exercise of his official duties, to help or hinder the V-M Timber Company in acquiring the state timber in which it was interested.

Appellant makes the further contention, with respect to the first three assignments of error, that the evidence was insufficient to suport the verdict of guilty because there was no testimony of an "agreement or understanding." This argument has reference to the provision, repeated in each of the three divisions of RCW 9.18.020, to the effect that the asking or receipt of the bribe or promise thereof be "upon an agreement or understanding" that the official's acts will be influenced thereby.

Appellant takes the position that, in view of this wording, it was necessary for the state to prove that appellant entered into an actual agreement or understanding with Hovey, to

the effect that appellant's official action would be influenced in favor of the V-M Timber Company. *State v. Benson*, 144 Wash. 170, 257 Pac. 236, is cited in support of this view. It is conceded by the state that there was no such evidence in this case.

In the *Benson* case, the defendant was charged with offering and promising a sum of money to a witness upon an agreement or understanding that the testimony of such witness would be thereby influenced. The evidence introduced at the trial supported the jury finding that an offer or promise was made for the purpose of influencing the witness' testimony. But the evidence further showed that the offer was not accepted, and that no agreement or understanding was arrived at between the parties. We therefore reversed the conviction.

The defendant in *State v. Benson* was not charged with the crime of *asking a bribe*, as defined in RCW 9.18.020, as was appellant here. Instead, he was charged, under RCW 9.18.040 (Rem. Rev. Stat., § 2323), with the crime of *offering to bribe* a witness. We held that the words "agreement or understanding," as used in the latter statute, require that the state prove that the defendant and the witness enter into an actual agreement or understanding to the effect that the witness would be influenced. We were careful to point out, however, that the case would be otherwise if the defendant had been charged with the crime of asking or receiving a bribe. On this we said:

"A number of cases are cited in which the charge was that of soliciting a bribe, but, in our statute at least, that offense is complete when there is either an asking or receiving, and therefore those cases are of no assistance here." (p. 171)

The different meaning to be attributed to the statutory words "agreement or understanding" when the crime charged is that of asking or receiving a bribe, as suggested in the *Benson* case, was fully developed in *State v. Whetstone*, 30 Wn. (2d) 301, 191 P. (2d) 818. In the *Whetstone* case, the defendant, as in the instant case, was charged with and convicted of asking and receiving a bribe. Likewise in

that case, as in this, the defendant contended on appeal that the evidence did not support the verdict because it did not show that any agreement or understanding had been entered into between the defendant and the persons of whom and from whom he was alleged to have asked and received a bribe.

We nevertheless affirmed on the basis of the following reasoning and authorities:

"We have examined a good many cases where the words 'agreement' or 'understanding' used in bribery statutes have been construed by the courts of various states, and the statement is made that the meaning to be given to those words depends upon the connection in which they are used, and that in construing a statute it is a very unsafe practice to adhere strictly to lexicographers' definitions of words standing alone and severed from their context.

"In *People v. Brigham,* 72 Cal. App. (2d) 1, 163 P. (2d) 891, defendant was charged with a violation of § 68 of the California Penal Code. This section contains a provision to the effect that every executive officer who asks or receives any bribe

" '. . . upon any agreement or understanding that his vote, opinion, or action upon any matter then pending, or which may be brought before him in his official capacity, shall be influenced thereby . . .'
In the cited case, the court quoted from *People v. Kerns,* 9 Cal. App. (2d) 72, 48 P. (2d) 750, at p. 75:

" ' "It is not necessary that there be an understanding, in the sense of an agreement, with the person unlawfully approached, but merely an understanding on the part of the bribe seeker himself that his official action shall be influenced." '

"The opinion in the *Brigham* case continues:

" 'The "agreement or understanding" as used in section 68 is not to be confused with the same words when used in connection with the valid and uncontaminated agreements incident to honest and honorable transactions.' " (pp. 329-330)

The distinction which our court has thus drawn between the meaning to be given the words "agreement or understanding," as used in the two kinds of statutes which have been referred to, is consistent with the rule prevailing in other states. In California, for example, an actual agree-

ment or understanding between the defendant and another person must be shown where the crime charged is the giving or offering of a bribe. *People v. Weitzel*, 201 Cal. 116, 255 Pac. 792, 52 A.L.R. 811; *In re Jang*, 25 Cal. App. (2d) 529, 78 P. (2d) 250. But where the crime charged is the asking or receiving of a bribe, no actual agreement or understanding between two persons need be proved. *People v. Squires*, 99 Cal. 327, 33 Pac. 1092; *People v. Powell*, 50 Cal. App. 436, 195 Pac. 456; *People v. Kerns*, 9 Cal. App. (2d) 72, 48 P. (2d) 750; *People v. Brigham*, 72 Cal. App. (2d) 1, 163 P. (2d) 891; *People v. Vollmann*, 73 Cal. App. (2d) 769, 167 P. (2d) 545.

In *State v. Durnam*, 73 Minn. 150, 75 N. W. 1127, a statute almost identical with our "asking or receiving a bribe" statute is given the same interpretation as we gave ours in *State v. Whetstone, supra.* Similar statutes and ordinances have been given the same construction in Massachusetts. See *Commonwealth v. Albert*, 307 Mass. 239, 29 N. E. (2d) 817; *Commonwealth v. Barker*, 311 Mass. 82, 40 N. E. (2d) 265. In states where the solicitation of a bribe is regarded as a common-law offense, it is uniformly held that no reciprocal agreement need be shown. *Walsh v. People*, 65 Ill. 58, 16 Am. Rep. 569; *People v. Hammond*, 132 Mich. 422, 93 N. W. 1084; *State v. Sullivan*, 110 Mo. App. 75, 84 S. W. 105.

*State v. Ferraro*, 67 Ariz. 397, 198 P. (2d) 120, cited by appellant, is similar to our case of *State v. Benson, supra*, in that the crime charged was the giving, offering or promising a bribe, rather than the asking or receiving of a bribe. The *Ferraro* case is therefore not in point.

The evidence in the instant case would permit a jury finding that, in asking a bribe, appellant understood in his own mind that he could and would be influenced in his official capacity if the bribe were given, and that his understanding in this regard was communicated to the person from whom the bribe was solicited. This was a sufficient showing of an "agreement or understanding," as those words are used in the statute in question.

Appellant's fifth assignment of error questions the action of the trial court in permitting cross-examination of appellant with reference to his income and sources of income.

Appellant took the witness stand in his own defense. On direct examination, he explained in detail his duties as secretary of the board, and told of his relationship with Hovey and with one Donald McEachern, who was involved in count II, upon which the jury disagreed.

On cross-examination, the state began questioning appellant concerning the nature of his duties. In this connection, the following question was asked and answered:

"Q. How often would you have to go out and check on the appraisals of land? A. I was out continually because, as I stated a few minutes ago, when you are dealing in large figures, one to three million dollars, you have a lot of work ahead of you and it is a constant job. I was on the job seven days a week. My phone rang at my home up until ten o'clock and the first thing in the morning. Through the three years I was on the job I never took one day's vacation, never took any time off. I liked the work. I was interested in it. It was very interesting."

Appellant's counsel, in his opening argument to the jury, had made a similar statement regarding appellant's constant devotion to duty.

Shortly after receiving the quoted answer, the prosecuting attorney asked appellant if he had not paid the state of Washington an excise tax on $36,278.56, representing earned income from personal services, exclusive of salary, received during the first six months of 1951. No objection was made to this question, and appellant answered in the affirmative. The prosecuting attorney then asked, without objection, a series of questions of a general nature as to the source of this money. Appellant answered to the effect that it represented commissions he had earned as a real-estate broker in connection with seven or eight large real-estate transactions.

Appellant was then asked whether he had ever received any commissions or payments from persons who had applications then pending before the board. No objection was made, and appellant answered that he did not recall. The

prosecuting attorney then took up, one by one, twelve individual transactions wherein, according to the form of the questions, it was implied that appellant had received payments in sizable amounts. It is this cross-examination as to particular transactions to which appellant now directs attention. It is his contention that this cross-examination was improper for the following reasons: (1) It constituted cross-examination beyond the scope of the direct examination; (2) it amounted to impeachment of the witness on a collateral matter; and (3) it was an attempt to impeach the witness by showing specific acts of misconduct.

Both in the opening argument of appellant's counsel and in appellant's volunteered statement on cross-examination, the representation was made that appellant devoted himself constantly to his work for the state. While this was a matter collateral to the crime charged, it was thus opened up for cross-examination. *State v. Morden*, 87 Wash. 465, 151 Pac. 832; *State v. Kreiss*, 133 Wash. 256, 233 Pac. 649; *Gillett v. Lydon*, 40 Wn. (2d) 915, 246 P. (2d) 1104. The questions, on cross-examination, asking appellant with respect to particular dates and amounts, whether he recalled the transaction, and the general nature thereof, were therefore proper and no error was committed in requiring them to be answered.

The prosecuting attorney did not stop with this, however. As to several transactions, he asked appellant if he remembered the name of the person who had made the payment, or whether he could verify, as such person, a name given by the prosecuting attorney. As to three of these transactions, appellant was able to give the name of such person. With regard to these three persons, appellant was then asked whether the individual in question had a matter then pending before the board.

At the very least, these questions implied that appellant carried on real-estate transactions with persons who had matters then pending before the board, and that, in so doing, appellant was guilty of an impropriety or indiscretion. But these questions also gave rise to the inference that the

payments in question were not the result of bona fide real-estate transactions, but were actually bribes paid to influence appellant's official action. It is therefore our view that the jury could, and was expected to, infer from this latter line of cross-examination that appellant had been guilty of misconduct in connection with prior unrelated matters.

This line of cross-examination, unlike the cross-examination previously referred to, was not opened up by appellant's testimony regarding his work seven days a week for the board. The fact that appellant was able to carry on outside transactions which produced substantial income tends to rebut that testimony. But the fact that those transactions involved persons who had matters then pending before the board has no such relevancy.

Nor was this line of cross-examination permissible on any other theory. It is a general rule that a defendant in a criminal case must be tried on the offense charged, and evidence of unrelated acts of misconduct may not be admitted. *State v. O'Donnell*, 195 Wash. 471, 81 P. (2d) 509; *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300; *State v. Goebel*, 40 Wn. (2d) 18, 240 P. (2d) 251. As indicated in these decisions, there are some exceptions to this rule of exclusion, none of which is applicable in the instant case.

With regard to impeachment, it is provided by statute that a prior conviction may be shown for the purpose of affecting the weight of a witness' testimony. RCW 5.60-.040 (Rem. Rev. Stat., § 1212); RCW 10.52.030 (Rem. Rev. Stat., § 2290); *State v. Arnold*, 130 Wash. 370, 227 Pac. 505. But a witness may not be impeached by showing specific acts of misconduct. *State v. Belknap*, 44 Wash. 605, 87 Pac. 934; *State v. Arnold, supra*; *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691. This is true whether the impeachment is attempted by means of extrinsic evidence or cross-examination. *State v. Belknap, supra*; *Warren v. Hynes, supra*. It is likewise true whether or not the past act of misconduct actually amounts to a crime. *State v. Belknap, supra*. Our court has said that if these rules of exclusion are not respected, the defendant is denied a fair and impartial trial.

*State v. Belknap, supra; State v. Devlin,* 145 Wash. 44, 258 Pac. 826.

Notwithstanding what has just been said, if a defendant puts his prior conduct into issue by testifying as to his own past good behavior, he may be cross-examined as to specific acts of misconduct unrelated to the crime charged. *State v. Armstrong,* 29 Wash. 57, 69 Pac. 392; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Hollister,* 157 Wash. 4, 288 Pac. 249; *State v. Johnson,* 180 Wash. 401, 40 P. (2d) 159; *State v. Kelly,* 187 Wash. 301, 60 P. (2d) 50. But in the instant case appellant did not testify or produce other evidence as to his own past good behavior. At no time did he state, specifically, or in effect, or by inference, that he had never had real-estate dealings with persons who had matters pending before the board, or that he had never asked or received a bribe from any other person.

The state argues that this cross-examination was proper for the purpose of testing appellant's memory as a witness. *State v. Shelton,* 16 Wash. 590, 48 Pac. 258, and 3 Wigmore on Evidence (3d ed.) § 889, are cited in support of this view.

There are two reasons why this argument is without merit. The first is that the record contains no intimation whatsoever that this was the purpose, or a purpose, of the cross-examination. The second reason is that, even if the state did have such a purpose, it would not warrant cross-examination along lines forbidden by other rules of evidence. In *State v. Shelton,* the cross-examination for the purpose of testing the witness' memory related to the specific transaction involved in the criminal charge, and the only objection which was advanced was that the question was immaterial.

The state contends, further, that this line of cross-examination was, in any event, not prejudicial, because appellant in each instance was unable to recall whether the individuals from whom payments had been received then had matters pending before the board. The state also points out that it made no effort to contradict appellant by producing extrinsic evidence bearing upon the matter.

In our view, the subject of the inquiry was such that the asking of the questions was prejudicial, regardless of the answers which they elicited. See *State v. Belknap, supra; Warren v. Hynes, supra.* In the *Belknap* case, we said:

"Nor is it material that the witnesses were not required to answer the questions. As said by the court in *Buel v. State, supra* [104 Wis. 132, 80 N. W. 78], the questions themselves implied to some degree that the examiner was possessed of information upon which the questions were based, and neither an answer nor a refusal to answer could remove the insinuation from the minds of the jurors." (p. 611)

Finally, the state argues that no objection was made by appellant until most of the testimony was in the record, and then the objection was not to the items of income, but from whom they were received.

It has already been indicated that the cross-examination as to whether appellant recalled the individual transactions and as to the general nature of such transactions was germane to the question of whether appellant was devoting his time exclusively to board work, and therefore proper. Whether or not appellant made proper objection to these questions, is therefore immaterial.

But when the state for the first time asked appellant about a specific transaction, inquiring whether he had received a commission from one J. B. England, "who at that time had a matter pending" before the board, appellant's counsel objected promptly on the ground that it was not proper cross-examination and concerned a collateral matter. When this same line of cross-examination was later undertaken with regard to transactions occurring on May 8 and June 19, 1951, counsel for appellant each time objected on the same ground. In the twelve pages of cross-examination dealing with these individual transactions, appellant's counsel interposed seven specific objections, on the ground mentioned above, to the questions regarding the name of the individuals or whether such individuals had matters then pending before the board.

It is true that appellant's counsel failed to object when the prosecuting attorney asked the general preliminary ques-

tion, not directed to any specific transaction, as to whether appellant had received any commissions from persons who had applications pending before the board. This general inquiry followed immediately after a long series of questions as to the general source of the $36,000, and it is not surprising that appellant's counsel did not instantly perceive the shift in the line of questioning. The very next question was directed to a specific transaction, and then, as noted above, objection was promptly taken. Under the circumstances, we do not believe that failure to object to the preliminary general question deprived appellant of the benefit of his subsequent objections.

 It is also true that, after the objections had several times been overruled, appellant's counsel did not always renew them each and every time a similar question was asked. Instead of so doing, counsel sometimes contented himself with objecting on other grounds, such as that the question was not in proper form, or was repetitious, or concerned a matter too remote in point of time. Where, however, the proper objection has several times been made and overruled, and any resulting prejudice has already occurred, the matter has been sufficiently preserved for review, notwithstanding the failure to renew the objection with each succeeding question. Moreover, in this case the state is hardly in a position to make a point of this, since the prosecuting attorney, during the cross-examination, volunteered the statement that it would be understood that the objection would run as to each transaction.

It is our conclusion that the trial court erred in permitting the cross-examination as to whether certain named individuals from whom appellant had received commissions had matters then pending before the board.

The remaining assignments of error deal with the admission of certain exhibits and the giving of, and refusal to give, certain instructions.

We find no error in the admission of the exhibits. With regard to the instructions given and refused, several of the questions raised by appellant have been answered by what has already been said in this opinion. In our view, the court

did not err in the giving of, and refusing to give, instructions. On the new trial, however, we believe that instruction No. 18, if given again, should be clarified so there can be no doubt left in the minds of the jury that the state must establish, beyond a reasonable doubt, every element of the crime charged. That instruction, however, is correct in stating that it is not incumbent upon the state to prove that appellant used any certain specific words in asking for the compensation or gratuity.

The judgment is reversed and the cause remanded, with direction to grant appellant a new trial.

GRADY, C. J., SCHWELLENBACH, FINLEY, and OLSON, JJ., concur.