[No. 23153. *En Banc.* December 11, 1931.]

ALFRED L. BAKER, *Appellant,* v. FRANK ROSAIA *et al.,*
*Respondents.*[1]

*George F. Hannan,* for appellant.
*L. B. Schwellenbach,* for respondents.

[1] Reported in 5 P. (2d) 1019.

BEELER, J.—The appellant brought this action to recover damages for personal injuries. The cause was tried to the court and a jury, resulting in a verdict in favor of the respondents. The appellant's motion for a new trial being denied, judgment was entered dismissing the action, and this appeal followed.

The controlling question to be determined is: Did the court err in giving and in refusing to give certain instructions? The facts are: Fourth avenue extends north and south, and crosses University street, which extends east and west, both being paved public thoroughfares within the corporate limits of the city of Seattle. University street, extending eastward from the intersection, is substantially on a level with Fourth avenue. Traffic at this street intersection is controlled by an automatic electric signal device suspended at the center of the street intersection. The signal alternately reflects red and green. Traffic stops on the red signal and moves on the green signal.

At about 10:30 o'clock on the forenoon of the day of the accident, Frank Rosaia and Fred Rosaia, sons of P. F. Rosaia, to whom we shall refer as "Frank" and "Fred," respectively, by means of a Lincoln sedan automobile, were towing a Ford touring car in a northerly direction on Fourth avenue. Frank was in the Lincoln sedan and Fred was at the steering wheel of the Ford. The distance between the two cars was about ten and a half feet. The tow line consisted of a steel cable approximately three-eighths of an inch in diameter, one end thereof being attached to the rear bumper of the Lincoln, which was about two and a half feet from the ground, and the other end being attached to the front axle of the Ford about fourteen inches from the ground. In this manner, the Ford had been towed for about a mile before they arrived at the

intersection of Fourth avenue and University street, where they stopped in obedience to a red light signal. At the same time, the appellant was standing on the sidewalk at the southeast corner of the street intersection, waiting for the green light, he intending to pass on his way in a northerly direction across University street.

When the traffic bell rang and the light signal changed from red to green, Frank started the Lincoln sedan and was making a right-hand turn eastward onto University street, and at the same time the appellant stepped from the sidewalk onto the street and walked a distance of about six feet and then stopped to let the Lincoln pass. As the rear of the Lincoln passed by him he proceeded northward across the street, and as he came in contact with the tow rope, tripped and fell forward, the front wheels of the Ford passing over his body. The evidence is in conflict whether the tow rope was taut or slack at the time the appellant tripped and fell. The two cars came to a stop, with the appellant underneath the Ford.

Frank denied having seen the appellant at any time prior to the accident. Fred testified he saw the appellant standing on the street waiting for the Lincoln to go by, being about six feet from the curb and midway of the Lincoln. He admitted that he did not sound the horn, but testified that, when the appellant was within three or four feet of the Ford, he yelled at him. From this testimony, it is apparent that the two cars must have traveled from fourteen to sixteen feet from the time Fred first saw the appellant until he yelled. The appellant, on the other hand, testified that the entire length of the Lincoln passed by him while he was standing on the street waiting for it to go by.

A witness on behalf of the appellant testified that the hand brake of the Ford would not hold the car

from going backward, and that a bystander placed some bricks underneath its rear wheels following the accident. The two cars were traveling slowly, Frank estimating their speed at from four to eight miles per hour, while Fred approximated it at six miles per hour.

■■ The appellant first contends that the lower court erred in refusing to instruct the jury, as a matter of law, first, that the respondents were guilty of negligence in towing the Ford through the streets by means of a cable, and argues that the Ford should have been connected to the Lincoln by means of a draw bar; and second, that the appellant was not guilty of contributory negligence. This would have been equivalent to a directed verdict in favor of the appellant.

The lower court rightly refused so to instruct. The Ford, under the circumstances disclosed by the evidence, was not a "trailer" within the meaning of Laws of 1929, chap. 180, p. 456, § 1, subd. (e). Clearly, the statute has no application to towing a disabled car to a garage for repairs. Furthermore, whether the respondents exercised such degree of care and caution in towing the Ford through the streets, prior to and at the time of the accident, as an ordinarily careful and prudent person would have used under similar circumstances, and whether appellant exercised that degree of care and caution for his own safety that an ordinarily prudent and cautious person would have exercised under like circumstances, were questions of fact to be determined by the jury.

The appellant next contends that the trial court erred in the giving of certain instructions to the jury. Twenty-three instructions in all were given. The appellant criticizes nine of the instructions, and contends that they contain erroneous statements of the law, with the result that he was denied a fair trial.

■ Instruction No. 14 reads:

"You are instructed that in this case the plaintiff contends that the defendant was negligent in that he failed to sound his horn after seeing plaintiff step in between the Lincoln and Ford cars. The driver of the defendants' Ford car admits that he did not sound the horn at that time, but testifies that he yelled to plaintiff. You are instructed that whether or not the failure to sound the horn and the substitution of yelling therefor, if you should find the fact to be that said driver did yell, would not necessarily constitute negligence, but that this is a question for you to determine from all of the surrounding facts and circumstances as to whether or not under the same circumstances the ordinarily careful and prudent driver would have believed that the method used by him, if he did use that method, would be more efficient than the sounding of his horn."

Under the facts and circumstances surrounding the accident, the question was not whether Fred, who was in charge of the Ford, was negligent in giving the signal or warning by means of yelling rather than by sounding the horn, *after* the appellant had stepped between the two cars, but rather whether the respondents were negligent in failing to give *timely* warning to the appellant while turning from Fourth avenue into University street. Fred admitted that, when he first saw the appellant, he was standing in the street at a point about midway of the Lincoln. Hence, the Lincoln traveled at least one-half its length and two-thirds the distance from its rear to the front end of the Ford, or possibly a distance of from fourteen to sixteen feet, from the time Fred first saw the appellant until he gave the warning by means of an outcry. If the cars were traveling four miles an hour, as testified by Frank, then a period of from two to two and a half seconds elapsed from the time Fred first saw the appellant until he shouted at him. If the cars were travel-

ing at six miles or eight miles per hour, then the time was correspondingly decreased.

So that the question which should have been submitted to the jury for its determination was not whether the respondent Fred Rosaia adopted a proper *method* of warning the appellant *after* he stepped between the cars, but whether the respondents were negligent in not giving a *timely* warning to the appellant while he was standing on the street and before he stepped between the two cars.

■ Instruction No. 12 reads:

"You are instructed that the defendants contend that the plaintiff was guilty of contributory negligence in stepping in front of the approaching Ford automobile the distance which he did, regardless of the question of the tow rope. If you believe that, regardless of the question of the tow rope, the distance between the plaintiff and the approaching Ford car was such that he would have been struck by the Ford car anyway, then you have a right to determine whether or not such an act constituted negligence upon the plaintiff's part under the circumstances, and if you find that it did, and such negligence proximately contributed to the plaintiff's injuries, then your verdict should be for the defendants."

This instruction is not only confusing, but injected into the case a speculative issue. The jury were told that, if they found that the plaintiff "would have been struck by the Ford car *anyway*," regardless of the rope, they might then take into consideration the fact that the plaintiff had attempted to pass between the two cars, in determining whether he was guilty of contributory negligence. It must be borne in mind that the appellant was not struck by the Ford car until after he tripped over the rope. He fell by reason of tripping over the tow-rope. The accident might never have occurred but for the presence of the tow-rope. The is-

sues should not have been confused by an instruction as to what might have occurred under a different situation. The question whether the appellant was guilty of contributory negligence should have been measured by the facts and circumstances as they actually existed at the time.

█ Instructions No. 10 and 11 will be considered together.

Instruction No. 10 reads:

"You are instructed that, in towing an automobile through the streets of the city, there must be exercised by the person in charge of the operation that degree of care towards pedestrians and other users of the street as would be exercised by an ordinarily careful and prudent person under the same or similar circumstances. In this regard, you are instructed that, while the provisions of the ordinance of the city of Seattle regulating towing of automobiles is not exclusive, and does not necessarily mean that the compliance with the provisions of the ordinance excuses the person in charge of towing vehicles from taking other precautions to prevent injury to pedestrians, you are, however, in passing upon the question of what is reasonable care under the circumstances, entitled to take into consideration the provisions of the ordinance. The ordinance provides that no motor vehicle shall tow more than one vehicle, that the connection between the two vehicles shall not be longer than 16 feet, that the vehicle being towed shall be in charge of a driver and shall be equipped with brakes sufficiently efficient to enable it to be stopped, and that no person shall drive or operate a motor vehicle with a tow line within the business district of the city of Seattle between four o'clock p. m. and six o'clock p. m. The ordinance further provides that a towed car must have lights; which provision clearly refers only to the towing of cars at night. The plaintiff contends that the defendants were negligent in that they failed to give him any warning of the fact that the Ford car involved in this accident was being towed. The question as to whether or not this would constitute negligence is for your determina-

tion, taking into consideration all the facts and circumstances surrounding it, if, under the circumstances, the ordinarily careful and prudent driver, either of the Lincoln car or of the Ford car, would have reasonably believed from the plaintiff's actions and conduct that he intended to step between the two automobiles, then it was their duty to warn him. If, on the other hand, taking into consideration all of the surrounding facts and circumstances, the ordinarily careful and prudent person would not have believed that the plaintiff was stepping between the two automobiles, then there was no duty upon their part to avoid him.''

Instruction No. 11 reads:

''You are instructed that the plaintiff contends in this case that the defendants were negligent in that they did not have the Ford car equipped with sufficient brakes. In this regard, you are instructed that it is apparent, under the undisputed evidence, that the presence or absence of sufficient brakes upon the Ford car could have had no effect upon the accident itself. You are therefore instructed to disregard any such testimony in reference to brakes.''

In Instruction No. 10 the trial judge referred to several matters not in issue. For instance, he called the jury's attention to the fact that the tow-line used in towing vehicles should not be more than sixteen feet in length under the provisions of the city ordinance; that no person should drive or operate a motor vehicle by means of a tow within the business district between the hours of four and six p. m. These, as well as several other matters in the instruction were clearly foreign to the question to be determined by the jury.

The latter part of instruction No. 10 is clearly a misstatement of the law. The measure of the respondents' duty was not whether an ordinarily careful and prudent person would have believed the appellant would not step between the two automobiles, but whether a careful and prudent driver, under the cir-

cumstances, would have given a signal or warning to the appellant before he stepped between the cars. Furthermore, by instruction No. 10 the jury were told that it was necessary to have a car which is being towed "equipped with brakes sufficiently efficient to enable it to be stopped," whereas, by instruction No. 11, the jury were told "that the presence or absence of sufficient brakes on the Ford car could have had no effect upon the accident itself," and that they should disregard all testimony in regard to the brakes. In this regard, these instructions were inconsistent and contradictory.

In fact, the instructions, as a whole, in many respects are inconsistent, contradictory, argumentative, confusing and misleading. This criticism applies especially to instructions Nos. 9, 18 and 20. Instructions Nos. 16, 17 and 21, criticized by the appellant, are correct expositions of the law.

The court rejected certain testimony offered by the appellant on rebuttal relating to the condition of the brakes of the Ford car. We hold this testimony to be competent if offered by the appellant during his case in chief.

For the reasons assigned, the judgment of the lower court is reversed and the cause remanded for a new trial.

MAIN, BEALS, MITCHELL, HOLCOMB, PARKER, MILLARD, and HERMAN, JJ., concur.

TOLMAN, C. J. (dissenting)—I am unable to find any prejudicial error, and therefore dissent.