[No. 25752.   Department Two.   December 16, 1935.]

OLIVER COCKERLINE, *Respondent,* v. CECIL ANDERSON *et al., Appellants.*[1]

*Ralph S. Pierce* and *Lehrer & Marquis,* for appellants.

*H. B. Noland,* for respondent.

BLAKE, J.—For some time prior to July 18, 1933, plaintiff was employed by defendants as a farm hand. On that day, while in pursuit of his duties as such, he sustained injuries. He brought this action, alleging

[1]Reported in 52 P. (2d) 321.

that his injuries were the proximate result of negligence on the part of defendants. The cause was tried to a jury, which returned a verdict for plaintiff. From judgment on the verdict, defendants appeal.

The only error assigned is predicated on denial of appellants' motion for judgment notwithstanding the verdict. Since this assignment raises only the question of the sufficiency of the evidence to make a case for the jury, it will be understood that our narrative of the facts will be in the light of the evidence most favorable to respondent.

At the time of the accident, respondent, with one Mustard, was engaged in hauling hay from a wheat field. The field was on a steep hillside. The hay was shocked in bundles. Mustard was on the ground, pitching the bundles up to respondent, who was on the rack. When one shock was loaded, respondent would drive along the hillside to the next shock. As respondent was driving along the hillside, the wagon overturned, tossing him twenty or thirty feet down and away from the wagon. The wagon had parted at the front axle. The rear wheels and the rack rolled down the hill and lodged among some weeds that were growing at the edge of the field. The front running gear remained hitched to the team.

The theory of respondent is that the upset was caused by the breaking of the king bolt; that the king bolt was old, worn and defective; that appellants breached their duty to furnish reasonably safe equipment with which to perform the work required of him. Appellants, on the other hand, contend that there is no proof that the king bolt broke; that, if it did break, there is no proof that it was the proximate cause of the injuries; that, in any event, no breach of duty on their part was proven. In other words, they contend that the cause of the upset was purely speculative, and

that the case falls within the rule of those cases holding that there can be no recovery where the accident may be attributable to one of several causes, some being the result of negligence of the master, and some not.

Many cases are cited in support of the rule, most of which have been collated in *Whitehouse v. Bryant Lumber & Shingle Mill Co.*, 50 Wash. 563, 97 Pac. 751. The rule itself is well established. Its application, however, does not place the burden on the servant of excluding every *possible* cause of the accident. He is not required to prove negligence beyond a reasonable doubt. *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804; *McGinn v. North Coast Stevedoring Co.*, 149 Wash. 1, 270 Pac. 113. In the former case, the court said:

"It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable. 'There are very few things in human affairs, and especially in litigation involving damages, that can be established to such absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause'."

Now, in the light of this rule, let us further examine the evidence. It has been noted that the wagon parted at the front axle. It is conceded on all sides that the

hillside was not steep enough to cause the wagon to overturn without some propelling cause. There is no intimation whatever of contributory negligence on the part of respondent. He testified that, before the wagon turned over, he felt the rack slip down against the front wheel on the downhill side. But one train of inference can follow from his evidence—that the king bolt broke; that it broke *before* the wagon overturned; that its breaking caused the upset. For the king bolt was all that held the rack and rear running gear to the front axle. As long as the king bolt held, the rack could not have slipped along the front axle down against the wheel.

But this is not all. A day or two after the accident, one of the appellants sent two men out to the field, who burned the grass and weeds at the place where the wagon turned over. They then picked up the iron parts and took them over to the ranch buildings and dumped them in a heap on the ground near the blacksmith shop. Another farm hand testified that, two or three days after the accident, he saw a heap of wagon iron near the blacksmith shop which "had apparently been through a fire;" that in the heap was a *part* of a king bolt.

Under the facts we have narrated, we do not think the cause of the wagon overturning is at all conjectural. The facts and circumstances proven lead to but one conclusion—that the king bolt broke.

It remains to be determined whether the breaking of the king bolt is attributable to negligence on the part of appellants. It was their duty to furnish respondent reasonably safe implements with which to perform the work required of him. This duty carries with it the obligation of inspecting such implements at such intervals as may be reasonably necessary to keep them in a safe condition. This duty was non-

delegable. No duty of inspection rested on respondent. He assumed only such risks as were open and obvious. *Sundin v. Edward Rutledge Timber Co.*, 249 Fed. 809; *Gaudie v. Northern Lumber Co.*, 34 Wash. 34, 74 Pac. 1009; *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091; *Mattson v. Eureka Cedar Lumber & Shingle Co.*, 79 Wash. 266, 140 Pac. 377. In the last case cited, it was said:

"The law applicable to this state of facts is elementary. It is too well established to require citation of authority, that there was a duty upon the part of the appellant to exercise reasonable care to furnish to the respondent a reasonably safe place in which to work. This is a positive, nondelegable duty, which carries with it the duty of reasonable inspection. It is also well established that, when a servant proceeds to work in a given environment, under a direct order from the master or the master's representative, he does not assume the risk of any dangers not so open and apparent as to be detected by ordinary observation."

This wagon, along with a number of others, was bought in 1922. The equipment was then two or three years old. The wagon had been used all through the years for various purposes—among others, hauling grain from ranch to warehouse. In such use, the wagon carried a load of two and one-half tons. Both appellants testified that they never had made an inspection of the king bolts on their wagons; and that, if such inspection was made at all, it was made by one Miller, a blacksmith, whom they employed to look after and repair their farm machinery and equipment. As to specific instructions from appellants with respect to making repairs, Miller testified that "they told me to look the wheels over and the coupling pole and the running gear, and sometimes I fixed the sides of them;" that he could not remember of any instructions with respect to examination of king bolts; that

if, in examining the front running gears of a wagon, the king bolt "did not look right," he would put in a new one; that he could not remember when he had replaced a king bolt. Finally, he was asked:

"Suppose a wagon had been used,—say it was second hand in 1922, saying nothing about how long it had been used before that, but during that time for three or four years it was used for wheat hauling six miles or so over roads that were rough and more or less hilly, and had been used for a certain amount of hay hauling on the ranch, would you consider that the king bolt would become weakened and worn in that period of time?"

and he answered: "I would not pronounce it first class."

In face of all the evidence, it cannot be said, as a matter of law, either that appellants exercised reasonable care to furnish respondent with a reasonably safe instrumentality with which to perform the work required of him, or that they exercised such reasonable care in making inspections as was necessary to maintain it in a reasonably safe condition. These questions were for the jury. *Mattson v. Eureka Lumber & Shingle Co., supra; McGinn v. North Coast Stevedoring Co., supra; Dumas v. Walville Lumber Co., supra.*

Judgment affirmed.

STEINERT, BEALS, MAIN, and HOLCOMB, JJ., concur.