[No. 26527. Department Two. May 24, 1937.]

EMMA THOMAS, as *Administratrix, Respondent,* v. INLAND MOTOR FREIGHT, *Appellant.*[1]

[1]Reported in 68 P. (2d) 603.

*Edge & Wilson, Brown & Weller,* and *Norman de-Pender,* for appellant.

*C. C. Quackenbush, A. J. Hutton,* and *Tustin & Chandler,* for respondent.

ROBINSON, J.—Alfred Thomas was killed at Springdale, Washington, on June 7, 1935, while driving a freight truck with attached trailer from Spokane to Colville. In approaching Springdale, traveling northward, there is a long down-hill grade with a sharp semicircular curve to the right just before reaching the railroad crossing. For some reason, Thomas failed to negotiate this curve. His truck went off at a left tangent somewhere about the middle and overturned. Thomas was pinned under the cab and burned to death before he could be extricated. The trailer remained upright on its wheels.

The widow of the deceased, as administratrix, brought this suit, setting up three separate causes of action, or, more accurately speaking, three grounds of recovery stated in separate counts. As a first ground, it was alleged that the death was approximately caused by the negligence of the defendant, in that it failed to

furnish him with a truck with suitable and efficient brakes in proper repair.

In view of certain questions raised on the appeal, it is important to determine and keep in mind the issue tendered by the so-called second cause of action. We quote portions of the pleading:

"The plaintiff herein alleges that the legal capacity of the truck driven by the said Alfred Thomas on the morning of June 7, 1935, while he was in the employ of the defendant, Inland Motor Freight, herein and under which he met his death was less than the actual load on said day; that the legal capacity of the trailer attached to the truck driven by the said Alfred Thomas on the morning of June 7, 1935, while he was in the employ of the defendant, Inland Motor Freight, a corporation herein, was less than the actual load on said day. . . . that the deceased Alfred Thomas did not know but the defendant, Inland Motor Freight, herein did know that said truck and trailer were overloaded and loaded greatly in excess of the amounts allowed by law but notwithstanding said knowledge on the part of the defendant, Inland Motor Freight herein and its officers and agents, they had in disregard to said overloading instructed the said Alfred Thomas to proceed with said load to Colville, Washington. . . . that the action of the defendant, Inland Motor Freight herein in overloading said truck and failing and neglecting to inform the said Alfred Thomas of the weight carried was negligence and was the direct and proximate cause of said action which resulted in the injury and death herein alleged and had the defendant, Inland Motor Freight herein loaded the truck and trailer in accordance with its carrying capacity and the amounts provided by law said accident and consequent injury and death of the said Alfred Thomas would not have happened."

The third ground of action need not be noted, since it was withdrawn from the jury during the progress of the trial.

The defendant denied that the brakes were defec-

tive; that the truck and trailer, or either of them, were loaded beyond the legal limit; that the plaintiff sustained damage in any sum by reason of any negligence of the defendant; and pleaded affirmatively contributory negligence and assumption of risk.

The trial resulted in a verdict for the plaintiff. Motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were timely made and denied, and judgment entered.

In appealing from the judgment, the defendant specifically appealed from the ruling made on its motions after verdict and also from every adverse ruling made by the court during the course of the trial.

The questions presented on appeal have, in spite of the excellent abstract furnished, necessitated an examination of the entire statement of facts and the thirty-nine exhibits attached thereto. As the statement is more than eight hundred pages in length and there are fourteen assignments of error, it is obvious that we cannot separately discuss all of the assignments or detail all of the evidence.

After reading the statement of facts, we were of the opinion, and are now of the opinion, that the court did not err (1) in denying a nonsuit at the close of plaintiff's evidence; (2) in refusing, at the close of plaintiff's evidence, to withdraw from the consideration of the jury the claim of negligence on the ground of defective brakes; (3) in denying defendant's motion for a directed verdict at the close of all of the evidence; (4) and in denying defendant's motion for judgment notwithstanding the verdict. But we are of the opinion that the court erred (1) in admitting certain opinion evidence; (2) in admitting exhibits 14 and 15; (3) and in refusing to withdraw from the consideration of the jury the claim of negligence based on alleged loading beyond legal limits; and it is our conclusion that these

errors were harmful to appellant and that its motion for a new trial should have been granted.

There were no eye witnesses to this accident. There was no direct evidence that the brakes of either truck or trailer were defective. There was a wealth of evidence, both oral and photographic, that after the accident there appeared a well-defined mark on the pavement made by the tires of a dual wheel, being first visible on the straightaway about eighteen or twenty feet before the curve began and extending around the outside edge of the curve and under the trailer, a distance of about 138 feet, to where the truck left the road, indicating that the left dual rear wheel of the truck slid or skidded that distance. Upon this mark on the pavement, the respondent's case was grounded and built up by the use of inference and opinion evidence.

The truck was equipped with an emergency brake, which operated on its transmission, and a service or foot pedal brake, which functioned by expanding shoes on the inside of the drums attached to the inside of the dual wheels at each end of the rear axle of the truck and on the rear axle of the trailer. Depressing the front pedal operated to set up friction at four points; that is to say, in two brake drums on the rear axle of each vehicle. Connection between truck and trailer was made by air hose, and the whole arrangement was made more effective by a "booster" arrangement, the only function of which was to step up and multiply the power applied to the foot pedal through the use of vacuums produced by the engine of the truck.

Mr. Goodwin, a resident of Springdale, who arrived on the scene very shortly after the accident, during the course of testifying what he saw there, said that he was a blacksmith and auto mechanic, and that he owned and operated a light truck and had driven logging trucks. He testified, among other things, that

the fact that there was but one skid mark indicated to him that a pin had given away inside the brake drum, allowing the shoe to expand, or, as he expressed it, "that either one of the holes where the pin goes through or the pin itself could have burned or worn in two and let it come loose and lock the wheel." It was later shown that witness was speaking of the internal mechanism of the brake, which could not be seen or inspected without removing the wheel. The truck was six or seven years old at the time of the accident, and, from evidence subsequently introduced, the jury was warranted in believing that the truck had operated twelve thousand miles since that wheel had been removed.

There was another line of expert testimony tending to support the claim of defective brakes. Mr. Blackwell was called purely as an expert. He had been in the motor car and truck business for more than twenty years. He also had driven logging trucks and was very familiar with truck braking systems, because, as he said, it was necessary to know his competitor's line of goods. He testified in part that the physical facts detailed to him, and particularly the long skid, indicated unequal braking; that the brakes were applied more effectively or severely on one set of the dual wheels than on the other, and that the brakes were not in good condition, in that they were not properly adjusted. He suggested that one way to test brakes was to drive a truck for two or three blocks, making several brake applications; but a more thorough way, and the only way to determine whether internal parts were worn, was to pull the wheels. He stated also that brakes could be tested in the garage by starting the truck at a reasonable rate of speed and applying the brakes to slide the wheels, and, if they all slide, it can be assumed that they are working perfectly.

It will be noted that there was a curious divergence in the views of the experts. To Mr. Goodwin, the skid mark indicated that something gave way, causing the left rear dual wheel of the truck to lock and slide. To Mr. Blackwell, the skid mark indicated that the left rear dual wheel was functioning as it should, while the other three were not.

The defendant introduced evidence to the effect that Thomas had been in its employ for about a year and a half, and had been driving the Colville route for about six months prior to his death. He made three round trips one week and four the next. Usually he left Spokane around 2:30 in the morning and arrived at Colville about 6:30. Here, he turned the truck over to another driver, who drove to Kettle Falls and points north, and, upon his return to Colville, Thomas took over the truck and drove it back to Spokane.

When a driver takes a truck out, he checks his oil, water, gas and lights, starts his motor, and applies the brakes to determine whether the booster system is working. He is instructed to apply the brakes within the first block after he leaves the terminal as a further test. An employee of appellant quietly follows each driver out of town at least once a month to determine whether or not he follows this instruction.

Each truck carries a log card, on which the driver records the particulars of the trip. On the back of these cards is the following:

"LOG OF TRUCK NO.——
DRIVERS—Write in Repairs Found Necessary, Damage to Truck, Loss of Equipment, or O. K. and Sign.

1. .................................................................................Driver
2. .................................................................................Driver
. . . . . . . . . . . . . . . . . ."

Three of these log cards were put in evidence. It appears from the first that Thomas drove the truck (No. 21), with a different trailer, to Colville on May 31st and returned it on June 2nd. On the back of the card appears "O. K. Al Thomas."

The second card shows that Thomas drove the truck to Colville on June 2nd and returned it to Spokane on June 4th. On the back of this card, referring to the trip up, appears "O. K. Thomas," and, with respect to the return trip, "Put glass in upper windshield. Al Thomas." The third card shows that Thomas drove the truck to Colville on June 4th and returned it to Spokane on June 6th, the day before the accident. As to the trip up and the trip back, he wrote on the back of the card "O. K. Al Thomas." In each of the three instances, the card also bears the O. K. of the driver to whom Thomas turned the truck over at Colville, and who drove it on the northern end of the route.

There was testimony by one of the appellant's drivers, of eight years' experience, that on the afternoon of June 6th, after Thomas had brought the truck from Colville, and before he took it out on the fatal trip on the morning of June 7th, the witness drove it around town to pick up freight, and that in so doing he used the brakes frequently, and they were in good order. There was further testimony that between Spokane and Springdale there were many curves and grades where the application of brakes would be necessary. Some of these grades were as steep or steeper than the grade into Springdale. Several witnesses testified that a truck starting free at a point about a mile and a half or two miles from Springdale would coast in, gathering great momentum as it went. The grade just before entering Springdale was about five per cent.

Several experienced truck drivers testified that it would be unsafe to take a loaded truck and trailer

around the Springdale curve at more than ten or fifteen miles per hour. One testified that it would be impossible to round the curve at a speed of thirty-five miles. George Dunn, who operated a service station right at the curve, testified that he saw the truck come down the hill at forty miles per hour on the morning of June 7th; that he observed it coming for six or eight hundred feet, and that it passed his station at thirty-five to forty miles per hour. The witness, however, testified that he saw Thomas trying to apply his brakes, by which he must have meant the emergency brakes, before he passed the station. Another witness, who was with Dunn, stated the truck was "going fast," but declined to estimate its speed.

Upon this and similar evidence, appellant contends that there can be no question in the minds of reasonable men but that the brakes were in good order when Thomas left Spokane; and that the only reasonable inference from the evidence, as to the proximate cause of the accident, is that Thomas attempted to take the curve at too great speed; and, in the alternative, if the brakes got out of adjustment after the truck left Spokane, Thomas must have discovered it, in which event he assumed the risk of taking the truck and trailer around the curve in that condition; and that, in any event, no negligence was shown on the part of the appellant, and the court erred in not taking the case from the jury and in not granting judgment notwithstanding the verdict.

■ The contention that Thomas entered the curve at a speed of thirty-five or forty miles per hour depends almost wholly upon the testimony of a single witness. Was this estimate correct, and, if so, was this speed voluntary or was it in part occasioned by a sudden failure of the braking system? The question of

contributory negligence depended upon such considerations as these and was undoubtedly for the jury.

The question of the assumption of risk was also for the jury, since the jury may have found that the cause of the accident was the failure of the internal mechanism of the left rear brake of the truck (Goodwin's theory). Thomas could not possibly be held, as a matter of law, to have assumed that risk.

■ The question as to whether there was any substantial evidence that appellant was negligent presents grave difficulty. The evidence that the brakes could not have been seriously out of adjustment when the truck left Spokane on the morning of June 7th, is overwhelming and in fact undisputed. The log cards turned in by Thomas himself testify that the truck needed no repairs when he brought it into Spokane on the previous afternoon, and that it was "O. K." on various other days during the previous week. The evidence of the pick-up man indicates that the brakes were in order on the afternoon of the 6th. There is a strong inference that they remained in good condition on the trip, at least as far as Loon Lake, which is only about six miles south of Springdale, for another truck driver talked with Thomas at that point on the route and he said something about having a heavy load, but made no mention of defective brakes. If they did get out of adjustment after leaving Spokane, that knowledge was not chargeable to appellant. Thomas himself was the only person who would or could know it. But, while the evidence which we have reviewed in this paragraph renders the Blackwell theory that the skid mark was caused by faulty brake adjustment highly improbable, if not wholly untenable, it does not rebut the Goodwin theory.

Did the respondent have the right to go to the jury on the theory that the internal mechanism of the

brakes gave way and the appellant was at fault for failure to inspect? The appellant contends the cause of the accident is purely speculative, and that the case falls within the.rule of those cases holding that there can be no recovery where the accident may be attributable to one of several causes, some being the result of the negligence of the master and some not.

It is uniformly declared that a jury will not be allowed to speculate in order to find a verdict. In actual practice, there are a number of cases which come very near to departing from that rule. The case of *St. Germain v. Potlatch Lumber Co.,* 76 Wash. 102, 135 Pac. 804, is frequently cited and sometimes quoted in our subsequent decisions. In that opinion, it is said:

"While it is a sound rule that to sustain a finding that the appellant's negligence was the proximate cause of the injury, the evidence must present something more than a mere possibility or conjecture, it is equally sound that *the cause of an accident may be inferred from circumstances.* A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable." (Italics ours.)

It is sometimes very difficult to determine whether a conclusion has been reached by logical inference or by mere conjecture. In the case at bar, the jury was entitled to find that the left rear dual wheel slid for a space of 138 feet, and that the slide began on the straightaway before the truck turned into the curve. Since the wheel slid on the straightaway and before entering the curve, something unusual must have

caused it to do so. From the evidence produced by the appellant, the jury was warranted in believing the slide was not caused by faulty brake adjustment.

There was evidence that a break in the internal mechanism within the left rear brake drum would cause the wheel to slide. The truck had been in use for six or seven years. That a time comes when mechanical parts will give way, is a matter of common knowledge. There was evidence that the sliding of that particular dual wheel would tend to throw the truck to the left and make it more difficult to negotiate the sharp curve to the right. Although the question involved is exceedingly close, this would appear to be a case where "the cause of the accident may be inferred from circumstances."

Appellant points out that there is no evidence in the record that it is the duty of an owner of a vehicle to remove wheels and inspect the internal mechanism of brakes if they are functioning properly. The truck was comparatively old and was, in the nature of things, getting nearer and nearer the point where failures from wear were bound to occur. There is evidence which warranted the jury in finding that it had been operated twelve thousand miles since the internal mechanism was laid bare. There is no evidence that this mechanism was inspected even then. It cannot be said, as a matter of law, that the appellant exercised reasonable care to furnish respondent with a reasonably safe truck. *Cockerline v. Anderson,* 184 Wash. 701, 52 P. (2d) 321.

We, therefore, think that no error was committed in denying the defendant's motions for nonsuit, for directed verdict, for the withdrawal from the jury of the claim that the brakes were defective, and in overruling its motion for judgment notwithstanding the verdict.

It is not impossible that the jury based its verdict upon the allegations of negligence contained in the so-called second cause of action. It was not there alleged that the truck was overloaded in the general sense. The allegations of the pleadings were that the truck and trailer carried loads of greater weight than permitted by law; that is to say, that a statute was violated. This was denied. There was no evidence introduced that the truck and trailer carried loads greater than allowed by law. There was evidence that they carried loads greater than they were licensed to carry, but that did not prove the allegations of the complaint and permit the introduction of the license applications, which were immaterial and were bound to be confusing and prejudicial.

Section 6362-8, Rem. Rev. Stat. [P. C. § 196-8], regulates the loads which may be carried on trucks, but that statute is not designed to insure safety of persons but to protect the highway from being cut up by heavy loads on too narrow tires; hence the prohibition of more than eight hundred pounds per inch width of tire. It is unnecessary, however, to determine whether or not a violation of that statute would establish negligence *per se,* for even under that statute, as the court instructed the jury, the truck and trailer would each be entitled to a gross weight of 24,000 pounds. As the combined weight of the truck and trailer was 15,320 pounds, they were, even under that law, entitled to carry nearly 33,000 pounds of freight.

The appellant's evidence tended to show that the combined load was not in excess of 22,140 pounds, and, although this was disputed, there was no evidence whatever indicating that it was in excess of 26,000 pounds. There was, therefore, no evidence that the truck and trailer were loaded beyond the limit pre-

scribed by any law or statute, and the appellant's motion to withdraw that issue should have been granted.

"We have frequently and consistently held it to be error to submit to the jury a question where there was no substantial testimony on which to base the instruction." *Burge v. Anderson,* 164 Wash. 509, 3 P. (2d) 131.

"Though negligence in this respect was alleged in the complaint and referred to in the instructions defining the issues, there was no testimony, worthy of the name, to support it. Failure to introduce testimony to support the allegation amounted to an abandonment of the issue, and it was reversible error to submit it." *Parton v. Barr,* 168 Wash. 60, 10 P. (2d) 566.

It is urged that the error was harmless, because, it is said, it must be presumed that the members of the jury followed the court's instruction and that their verdict was, therefore, in no way affected by the submission of the legal weight issue. That contention must be rejected, for the record shows that, on the day after the case was submitted to the jury, the jury returned for further instructions and that one of its members requested additional light as to the legal limit of weight on trucks. It is apparent that the false issue was still under consideration at that late stage of the jury's deliberation, and we cannot say that the error was harmless.

█ Almost all the expert testimony given by the witnesses Goodwin and Blackwell was vigorously objected to by counsel for appellant, either on the ground that the question propounded to the expert was one which any one could answer or on the ground that the question was one which no one could answer. On three or four occasions, when the latter objection was made, the court said, "He may answer if he can." We think that a number of these objections should have been sustained.

An expression by Judge Campbell in *People v. Mor-*

*rigan,* 29 Mich. 4, concerning expert testimony, has been frequently quoted by text writers and cited in decisions:

"Such testimony is not desirable in any case where the jury can get along without it; and is only admitted from necessity, and then only when it is likely to be of some value."

A more modern statement may be quoted from 3 Jones' Commentaries on Evidence (2d ed.), § 1312:

"In a great variety of cases where the subjects under investigation are wholly unfamiliar to the jury or even to the judge, there would be no adequate mode of arriving at any satisfactory conclusion if expert testimony were rejected. In recognition of this fact the courts have adopted a rule admitting the opinions of experts whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment without such assistance. In other words, expert testimony is admissible whenever the subject so far partakes of the nature of a science as to require a course of previous habit or study in order to attain a knowledge of it. And where such is not the case, the general rule excluding opinions of witnesses comes into play, as shown in the opening sections of this chapter."

It was proper in this case to call experts to explain the intricacies of the booster system of brakes. The experts called by respondent testified about brakes, but in the main they functioned as expert interpreters of skid marks. Whether that subject partakes of the nature of a science, is somewhat open to doubt. At any rate, we think it was error to permit these witnesses to testify to such elementary matters as that wheels would skid more readily on wet pavement than on dry pavement, that a heavy load would put more strain on brakes than a light load, and that a heavy load would require more braking power than a light load. Such a procedure is a process of argumentation

rather than the elicitation of expert opinion, and in addition is likely to give the expert a general appearance of infallibility which he may not in fact deserve.

The following question propounded to Goodwin, and which he was permitted to answer over objection, was, at the least, very unfortunate in form:

"I will ask you whether or not if a reasonable inspection were made of those internal brakes, if the condition of which you have just spoken could have been disclosed and this accident prevented."

Mr. Blackwell was asked the following question:

"I will ask you this question. You have in mind the braking system that I have detailed to you, the weight of the truck and trailer, the weight of the cargo on both. I will ask you to state whether or not if the brakes had all been applied equally from the time of this skidmark 137 or 138 feet back and eighteen to twenty-five feet before it struck the curve, whether or not there would have been sufficient braking power there in your opinion, from the facts that I have detailed to you, to have circled the curve by the truck and the trailer. . . . MR. EDGE: How could any witness answer that without knowing the speed at which those objects were going? THE COURT: I don't know. I am ruling that if Mr. Blackwell can answer it he may do so."

We think that error was committed in overruling the objection. The witness did not know—no one knew—the speed of the truck and trailer (and therefore the momentum) or the braking power necessary to slow the truck and trailer down to a speed that would permit them to circle the curve, or what speed would permit them to do so, or the braking power actually exerted, or the braking power which would have been exerted "if the brakes had all applied equally." The question was clearly not susceptible of an answer based either upon scientific calculation or experience. The witness answered the question in the affirmative. The

jury knew that the witness had been right about a number of other things, and in this delicately balanced case that answer may have tipped the scales.

The judgment appealed from is reversed, and the trial court directed to grant the appellant's motion for a new trial.

STEINERT, C. J., HOLCOMB, BEALS, and TOLMAN, JJ., concur.