[No. 27709.   Department One.   May 11, 1940.]

EARL WARREN, *a Minor, by E. A. Warren, his Guardian*
*ad Litem, Appellant,* v. SAMUEL J. HYNES,
*Respondent.*[1]

[1]Reported in 102 P. (2d) 691.

*Koenigsberg & Sanford,* for appellant.

*Kahin, Carmody & Schramm,* for respondent.

MILLARD, J.—A minor, by his guardian *ad litem,* brought this action to recover for personal injuries

sustained by him in an automobile collision. Trial of the cause to a jury resulted in verdict in favor of the defendant. From judgment entered thereon, motion for new trial having been overruled, plaintiff appealed.

The facts are briefly as follows: The course of Dexter avenue, which is a paved street in the city of Seattle seventy-eight feet wide, is north and south. That avenue intersects with John street, an east and west paved highway approximately forty-two feet wide. About 8:30 p. m. August 8, 1938, Earl Warren, age sixteen years, was operating his automobile south on Dexter avenue. As he approached the intersection, when at a point one hundred and fifty to one hundred and eighty feet north of the intersection, he looked to his left, or east, for traffic on John street. He did not see from that place of observation any approaching travel or headlights on John street. He then proceeded into the intersection, when he looked to the right, or west, on John street for travel from that direction. When the front wheels of appellant's automobile were just over the center line of John street and while on his own side of the highway (west side) he glanced quickly to the left or east, when for the first time he saw respondent's automobile, which was traveling westerly on John street. Before appellant could gain any speed with his automobile, respondent's automobile collided with the left rear end of appellant's automobile, causing the latter to turn over in the south crosswalk. This action was brought to recover for the personal injuries sustained by Earl Warren as a result of that collision.

Respondent's cross-examination, over objection, of appellant concerning the latter's occupation, by which cross-examination respondent was permitted to accuse appellant of the commission of crimes, is assigned as error.

In the direct examination of Earl Warren, who is now approximately seventeen years old, he was not interrogated concerning, nor was any reference made to, his occupation. Appellant withdrew from his complaint by trial amendment served and filed prior to the trial of the cause all claims for future loss of wages or employment. In the cross-examination of Earl Warren, the following occurred: "Q. What is your occupation? A. I have been going to school; I haven't any occupation."

The appellant objected to further examination on the question of occupation. Respondent's counsel then placed in writing the question he proposed to ask the appellant and handed it to the court. The following colloquy was had in the absence of the jury:

"THE COURT: All right, you may state in the record now what question you wish to ask the witness. MR. KAHIN: I wish to ask the witness at the present time what his occupation is. That is the first question. THE COURT: You have already asked him. He said he had none. MR. KAHIN: I wish to ask him if he hasn't made his living by stealing automobiles and holding up people, if that hasn't been a source of his livelihood, a true source of his livelihood and one of his main activities."

Appellant objected on the ground that the sole design of the question was to prejudice the jury against the appellant and on the further ground of incompetency, irrelevancy, and immateriality, because it did not have anything to do with the merits or the issues of the case. The objection was overruled. Earl Warren resumed the stand, the jury was recalled, and cross-examination was continued as follows:

"MR. KAHIN: Mr. Barber, will you stand up? MR. SANFORD: Excuse me, just a minute. Come down from the stand. (Speaking to witness.) MR. KAHIN: Well, I object to counsel giving any advice to the wit-

ness. MR. SANFORD: He hasn't resumed the stand. MR. KAHIN: I think he has resumed the stand and I insist on proceeding. MR. SANFORD: I have a right to advise my client on his protection under the law. THE COURT: I will advise the witness of his rights, if any,— MR. SANFORD: (interposing) Very well. THE COURT: (continuing)—if it becomes necessary. You may take the stand, young man. Q. What were you just advised by counsel? THE COURT: You need not answer that question if you do not wish to. Q. Do you prefer not to answer? A. Yes, I do. Q. Isn't it a fact that your occupation has been that of a hold-up man, a bandit and an automobile thief? A. I have no occupation. Q. Answer the question. Aren't these two men that you have held up, standing up? MR. SANFORD: Is your answer no? THE COURT: Just a minute, young man, I am bound to tell you that the law provides in this state that you cannot be required to answer any question which, in your opinion, may tend to incriminate you. By that, I mean you will not be required to sit up on the stand and admit any crime. You may answer the question or not, as you please. Q. You prefer not to answer that? A. Yes, I do. MR. KAHIN: That is all, you may sit down. (Speaking to two men standing in back of courtroom.)"

While the extent of the cross-examination of a witness is a matter which rests largely in the discretion of the trial court, the rule is well settled that the answer of a witness upon cross-examination upon a merely collateral matter, e. g., regarding specific acts which would show his past conduct, his antecedents, and character, cannot be contradicted.

Whether a matter is collateral within the meaning of the rule is whether it is admissible for any purpose independently of the contradiction.

"The test as to whether a matter is material or collateral, within the meaning of the rule, is whether the cross-examining party is entitled to prove it in support of his case." *State v. Johnson,* 192 Wash. 467, 73 P. (2d) 1342.

Applying that test, it is clear that the trial court committed prejudicial error in overruling appellant's objection to the cross-examination. Respondent was not entitled to prove Earl Warren's occupation in support of respondent's case.

The rule is firmly established in this state that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. In such matters, the party cross-examining the witness is concluded by the answers given. *State v. Sandros,* 186 Wash. 438, 58 P. (2d) 362. See, also, *State v. Johnson,* 192 Wash. 467, 73 P. (2d) 1342, in which the authorities on this question are collected.

In *State v. Dale,* 119 Wash. 604, 206 Pac. 369, we held that, where the state on cross-examination explores the subject of a previous arrest of the accused for a distinct offense, the state is bound by the answers as upon a purely collateral matter, and that it constitutes reversible error to permit the state to introduce rebuttal evidence thereon. In the course of our opinion in *State v. Dale, supra,* we said:

"Since the state was not in any manner attempting to prove a previous conviction, the matter of a previous arrest and the previous possession of whiskey was not made admissible by the statutes referred to, and if admissible at all, which in the light of what was said in *State v. Smith,* 103 Wash. 267, 174 Pac. 9, may well be doubted, was purely a collateral matter upon which the witness could not be impeached under elemental and familiar rules. The state was, in any event, therefore concluded by his answers upon cross-examination, and it was reversible error to permit the introduction of the rebuttal testimony. A careful study of the record fails to convince us that there was any other error of a sufficiently prejudicial nature to warrant reversal; but for the error pointed out, the case must be, and it is hereby, reversed and remanded for a new trial."

In *Kirk v. Seattle Electric Co.*, 58 Wash. 283, 108 Pac. 604, 31 L. R. A. (N. S.) 991, which was an action to recover for personal injuries for an assault, the plaintiff, who was respondent on appeal, was permitted to impeach the motorman of the street car in regard to his testimony as to his age. We held that the age of the first motorman was an immaterial matter, and there was not any necessity for inquiry in regard to it; that it was a collateral matter, and, if the plaintiff were permitted to cross-examine the witness as to his age, he would be bound by the answer and could not subsequently contradict that answer.

See, also, to the same effect, *Wharton v. Tacoma Fir Door Co.*, 58 Wash. 124, 107 Pac. 1057.

In *State v. Spadoni*, 137 Wash. 684, 243 Pac. 854, a judgment entered upon conviction of homicide was reversed. In the course of our opinion, we said:

"A witness may not be questioned as to collateral matters and then be impeached because he does not make true answers. On questions of this sort the state is bound by his answers. *State v. Payne*, 6 Wash. 563, 34 Pac. 317; *State v. Melvern*, 32 Wash. 7, 72 Pac. 489; *State v. Carpenter*, 32 Wash. 254, 73 Pac. 357; *State v. Stone*, 66 Wash. 625, 120 Pac. 76. Where the defendant is the witness, the rule is not different. When the defendant takes the stand and gives testimony in his own behalf, he may be cross-examined as an ordinary witness, but, like the ordinary witness, the state is bound by his answers when the questions pertain to collateral matters. In this instance, the accused was not on trial for a crime committed against the daughter of Pardini. This was a matter collateral to the issue on trial, and the state had no more right to contradict his answers concerning it than it had to contradict his answers concerning other matters not pertinent to the issue."

See, also, *State v. Nolon*, 129 Wash. 284, 224 Pac. 932, and *State v. Joffery*, 129 Wash. 322, 225 Pac. 48.

In *State v. Lazzaro*, 100 Wash. 562, 171 Pac. 536, the

defendant was convicted of accepting the earnings of a prostitute. In his examination, the appellant testified that he earned three dollars daily when employed as a deputy sheriff, and that he did not receive a salary. At some length, on cross-examination, the state's attorney interrogated the defendant respecting the money he earned, in an effort to show that, during the time he was deputy sheriff, the defendant had not earned a living in that employment. We held that the facts elicited upon cross-examination related to an immaterial and collateral matter, which, under elementary principles, is not a proper basis for impeachment; and that

"It must be borne in mind that the appellant is not charged with living off the earnings of a prostitute, but with a specific offense—the acceptance of five dollars on June 15, 1916, earned in the practice of prostitution. His means of livelihood, therefore, was purely collateral to the issue in the case. The rebuttal testimony, in the respect complained of, was clearly inadmissible and highly prejudicial, necessitating a reversal of the case."

In *State v. Arnold*, 130 Wash. 370, 227 Pac. 505, the defendant was convicted of the crime of robbery. On cross-examination, the defendant was asked whether he was ever convicted of a crime, which query he answered in the negative. He was then interrogated as to what disposition was made of his case in the juvenile court. A very full explanation of what occurred in the juvenile court proceeding was made. To all of that examination, the defendant's objections were overruled. We held that the cross-examination was improper and prejudicial, and in the course of the opinion in condemnation of that cross-examination, we said:

"It seems to us that the purpose of this cross-examination, except the first question or two, was to bring out from the appellant that the prosecuting attorney's

office had previously accused him of a certain crime, and that because of certain facts or conditions he had not been tried in the superior court but had been remanded to the juvenile court, where no action was taken concerning his guilt or innocence. In other words, it seems plain that this cross-examination was not for the purpose of trying to prove that appellant had been previously convicted of a crime, but to show that he had been charged with a crime and for some reason not prosecuted.

"Proving that one has been charged with a crime is not permissible under the statute quoted, nor is it admissible under any rule of law for the purpose of affecting the credibility of his testimony, because a perfectly innocent man may be so accused; nor can we say that this cross-examination was not prejudicial. When a jury is informed that the defendant has previously been accused by the prosecuting attorney of some offense, it is manifest that it may thereby be prejudiced. But the state contends that this cross-examination was made under such unusual circumstances as to justify it. It may be that the circumstances were unusual and such as would tend to provoke the examination, yet it cannot be held proper on that account." *State v. Arnold,* 130 Wash. 370, 227 Pac. 505.

In 28 R. C. L. 613, § 202, the rule regarding conclusiveness of answers as to collateral matters is stated as follows:

"The rule is firmly established that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. Or, as it is frequently stated, an answer by a witness upon cross examination, upon a merely collateral matter, cannot be contradicted. If he be asked as to a collateral fact, his answer is conclusive on the party examining him, and it is not allowable to a counsel on cross examination to put a question to a witness concerning any distinct collateral fact, not relevant to the issue, for the purpose of disproving the truth of the expected answer by other witnesses. The principal reasons of the rule are, undoubtedly, that but for its enforcement the

issues in a cause would be multiplied indefinitely, the real merits of the controversy would be lost sight of in the mass of testimony to immaterial points, the minds of jurors would thus be perplexed and confused, and their attention wearied and distracted, the costs of litigation would be enormously increased, and judicial investigations would become almost interminable. There is probably no conflict in regard to the general rule, but some difference exists as to what is or is not collateral, courts exhibiting a greater or a less degree of indulgence on this point. It may be regarded as settled, however, that the answer of a witness to questions regarding specific acts which would show his past conduct, antecedents and character, are final and cannot be contradicted. Thus, while a witness may be asked if he has been guilty of a crime, if he chooses to answer the question, his reply is conclusive unless he has been convicted thereof. On the other hand it has been held that the rule does not apply in all its rigor when the cross examination is as to matters which, although collateral, tend to show the temper, disposition, or conduct of the witness in relation to the cause or the parties. His answers as to these matters are not to be deemed conclusive, and may be contradicted by the interrogator. It has been said that the test of the materiality of a matter is its competency if sought to be proved by the cross examining party in establishing his case."

■ Evidence of particular acts of misconduct which tend to disgrace a witness cannot be elicited from such witness on cross-examination for the purpose of impeaching him, any more than it can by the testimony of other witnesses.

The character of witnesses may not be discredited on cross-examination by questions as to whether they had committed specific criminal acts. *State v. Freitas,* 158 Wash. 155, 290 Pac. 701.

The argument that respondent was endeavoring to test the appellant's credibility by his cross-examination described above, is not sound. One may not by such

method as was employed by respondent bring into the case collateral matters to the prejudice of appellant.

Any discretion the trial court may have had in the matter was grossly abused. Courts and counsel should be mindful of the rule that evidence, even in a criminal case, may not be admitted of a criminal charge, but only of a previous conviction. The presumption should be conclusive that one is innocent of the commission of a crime of which he is accused until his guilt is proved.

■ The mere query whether appellant's occupation had been that of an automobile thief, which question was not material to the issues in the cause, was in- tended to, and doubtless did, arouse the animosity of the jury toward appellant, and he was thereby denied a fair trial. *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335; *State v. Devlin,* 145 Wash. 44, 258 Pac. 826.

To further interrogate Warren, whose character was not an issue, as to whether he had "held up" the two men standing in the court room, was additional reversible error.

In *State v. Belknap,* 44 Wash. 605, 87 Pac. 934, we quoted with approval the following language, which may be aptly employed in the case at bar, from the opinion in *Elliott v. Boyles,* 31 Pa. St. 65:

" 'It would be absolutely intolerable that a man, by being brought into court as a witness, should be bound to submit all the acts of his life to the exposure of malice, under the pretence of testing his credibility. If such were the test, courts would often present, in language and temper, scenes of unmitigated ruffianism, and the means of enforcing law and order in society, would be denounced as sources of corruption and disorder.' "

■ The assignment of error in permitting a witness to testify, over appellant's objection, as to appellant's reputation for truth and veracity in Seattle, is without

merit. In impeaching the credibility of appellant, the inquiry was confined—in conformity to the long-settled rule—to appellant's "general" reputation for truth and veracity.

■ A professional engineer who examined both automobiles three days after the accident, called as a witness by respondent, testified that the condition of the bumper on respondent's automobile indicated that appellant's automobile at the time of the collision was moving at a fairly rapid rate of speed in front of respondent's automobile, which was proceeding in a forward direction at a comparatively slow rate of speed.

One of the alleged items of negligence was that of unlawful rate of speed of respondent's automobile. The conclusion or opinion of the witness was a mere speculation or guess. He undertook to determine an issue in the cause, that of speed, when it was the sole duty of the jury to decide that issue on all the evidence. While the witness could properly testify as to the condition of both automobiles as he viewed them subsequent to the accident, he could not speculate or guess from the condition of the bumper on respondent's automobile the rate of speed at which both automobiles were traveling. This constituted an invasion of the province of the jury, and the admission of that testimony was prejudically erroneous. *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170; *Hill v. Great Northern Life Ins. Co.,* 186 Wash. 167, 57 P. (2d) 405; *Thomas v. Inland Motor Freight,* 190 Wash. 428, 68 P. (2d) 603; *Cook v. Stimson Mill Co.,* 41 Wash. 314, 83 Pac. 419; *Cleasby v. Taylor,* 176 Wash. 251, 28 P. (2d) 795.

■ Appellant assigns as error the giving of instruction No. 9, by which the court charged the jury that the statute (Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846], Laws of 1937, chapter 189, p. 899, § 88) respecting the duty of the operator of a vehicle on

approaching public highway intersections to look out for and give right of way to vehicles on his right simultaneously approaching a given point within the intersection, whether such vehicle first enters and reaches the intersection or not, does not accord the favored driver the right to collide with any vehicle within the intersection that may be on his left when the driver of that vehicle has complied with the statute and accorded to the favored driver *ample space* in which, by the exercise of reasonable care, to pass safely across the intersection. The qualification of the right of way rule by inclusion of the words "ample space" is erroneous and is in conflict with the statute, which required the disfavored driver (respondent) to give the full west half of Dexter avenue to appellant for his automobile.

In *Geitzenauer v. Johnson,* 161 Wash. 444, 297 Pac. 174, which was another intersection automobile collision case, we held that a driver who had the right of way could not recover when on his half of the street there was ample room for him to pass the other car, of which opportunity he did not avail himself. We also held that the disfavored driver could not recover, because he stopped his car approximately eighteen inches over the center line of the street and encroached that distance upon the half of the street which the law appropriated to the use of the driver on the right. In the course of the opinion, we said:

"We hold that, when the statute requires a driver to look out for and give the right of way to vehicles approaching from his right, in the absence of some extraordinary or unusual circumstances it means that that portion of the street shall be surrendered over which the favored car has a right to travel. Differently stated, we hold that, where the disfavored driver is attempting to surrender the right of way, as in this case, he must surrender at least the entire portion of the street to the right of the center line; that failing

to do so is a violation of the statute, and, under numerous decisions of this court, constitutes negligence."

See, also, *Hemrich v. Koch,* 177 Wash. 272, 31 P. (2d) 529, and *Dyer v. Wallner,* 189 Wash. 486, 65 P. (2d) 1281.

By another instruction, the court correctly charged the jury that yielding the right of way means yielding the entire portion to the right of the center of the road way; and that, if the disfavored driver yields only a portion of the road way to the right of the center, he violates the statute (Rem. Rev. Stat., Vol. 7A, § 6360-88).

■ The instructions are inconsistent and contradictory. One sets up for the jury an incorrect rule in conflict with the correct rule, as to which the court properly instructed the jury. It is true that all of the instructions must be read as a whole. So read, we find they are inconsistent and contradictory, and set up for the guidance of the jury irreconcilable rules pertinent to a vital issue in the cause. See *Baker v. Rosaia,* 165 Wash. 532, 5 P. (2d) 1019, and *Hart v. Clapp,* 185 Wash. 362, 54 P. (2d) 1012.

■ Finally, appellant complains of an instruction by which the jury was charged that appellant, as he approached the intersection, had a right to assume that a car approaching from the east *and not yet in the intersection* would yield the right of way to appellant, and could proceed upon such assumption until appellant knew or, by the exercise of reasonable care, should have known that a car from the east traveling west on John street was not going to yield the right of way to the appellant.

The inclusion of the words "and not yet in the intersection" erroneously qualified the statutory rule (Rem. Rev. Stat., Vol. 7A, § 6360-88) respecting right of way at intersections. The jury may have incorrectly as-

sumed that, if the respondent's automobile arrived first at the intersection, appellant, who was the favored driver, could not proceed upon the assumption that respondent's automobile would yield the right of way. That would be the logical inference from the instruction, which, as stated, contradicts the statutory rule (Rem. Rev. Stat., Vol. 7A, § 6360-88) of right of way at intersections.

In another instruction, the court correctly informed the jury respecting the rule. The two instructions are in hopeless conflict. The rule incorporated in the instruction of which appellant complains is erroneous, in that it instructed the jury that the appellant, who was the favored driver in approaching the intersection, could not assume that the other driver would yield the right of way if that other driver had already arrived at the intersection.

"The burden to avoid colliding with a car approaching from his right rests heavily upon the disfavored driver. A clear and unambiguous statute imposes this burden, and the ingrafting of exceptions upon this sound and wholesome rule of the road would tend only to confusion and lead drivers occupying the disfavored position under the statute to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another. Speed is of much less importance than safety, and, under modern traffic conditions, safety, to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians." *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371.

Counsel for respondent contend that there was an absence of prejudicial error in the trial of the cause, for which reason the judgment should be affirmed. As an additional reason for affirmance of the judgment, respondent insists that appellant was guilty, as a mat-

ter of law, of contributory negligence which bars recovery.

■ There is ample evidence which, if accepted as true—the jury is the exclusive judge as to that—established the negligence of respondent.

As to the question of contributory negligence, there is evidence that appellant, who was the favored driver and had the right of way, as he approached the intersection, looked to the east when at a point one hundred and fifty to one hundred and eighty feet north of the intersection, and that no automobiles were observed by him approaching from his left (the east), nor could he see the headlights of any automobile. As he drew near to the intersection and prior to entering same, the appellant looked to his right on John street and did not again look to the left until his automobile arrived at the center of the intersection. It cannot be said, as a matter of law, that that constitutes contributory negligence barring recovery. Without reviewing all the evidence, it is sufficient to say that there is clearly room for differences of opinion respecting the conclusions to be drawn from the facts, from which it follows that the question whether the appellant was guilty of contributory negligence which barred recovery was a question of fact for the jury.

The judgment is reversed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.